(No. 36582.—

THE CITY OF PEORIA, Appellee, *vs.* PEORIA CITY LINES, INC., Appellant.

*Opinion filed March 23, 1962.—Rehearing denied May 23, 1962.*

CASSIDY & CASSIDY, of Peoria, for appellant.

MAX J. LIPKIN, of Peoria, for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This is a direct appeal by defendant Peoria City Lines, Inc., from a summary judgment entered by the circuit court of Peoria County requiring defendant to pay $98,103.97 to the city of Peoria under a franchise ordinance. The cause presents essentially the issues of whether the doctrines of *res judicata* or estoppel by verdict bar consideration of the validity of the franchise ordinance as an exercise of the city's regulatory power, and the propriety of imposing interest for failure to pay the sums specified in the ordinance.

The chronology of events appearing in the pleadings, affidavits, and counteraffidavits commenced on April 2,

1946, when the city of Peoria adopted an ordinance granting an exclusive franchise to the Peoria Transportation Company, its successors and assigns, to operate a motor bus system on the streets of Peoria. The ordinance was amended on October 8, 1946, and both the ordinance and amendment were accepted in writing by the Peoria Transportation Company. The ordinance set forth certain contractual undertakings on the part of the city, and required the transportation company to pay a percentage of the gross receipts from fares as consideraion for the exclusive franchise and use of the streets.

On April 14, 1955, Tisco, Inc., was incorporated in Illinois. Several days later, an agreement was entered between its shareholders and those of the transportation company, then known as Peoria Transit Lines, Inc., whereby the latter would sell its capital stock to Tisco for $1,500,-000; that upon consummation of the sale the transportation company would transfer to Tisco all of its assets, including the franchise, and its liabilities, in exchange for the cancellation of its capital stock purchased by Tisco; and that thereafter Peoria Transit Lines, Inc., should be dissolved.

On May 3, 1955, the Illinois Commerce Commission approved the joint petition of both companies for dissolution of Peoria Transit Lines, Inc., and for the sale and distribution of its assets, including the franchise, and liabilities to Tisco.

On May 4, 1955, articles of dissolution of Peoria Transit Lines were filed in the office of the Secretary of State, and that same day Tisco changed its corporate name to Peoria City Lines, Inc. Pursuant to the agreement and the order of the Illinois Commerce Commission, the franchise was assigned to Peoria City Lines, Inc., the defendant herein, and the latter assumed all liabilities of the Peoria Transit Lines.

Prior to the transfer of the assets of Peoria Transit Lines and on August 16, 1954, the present plaintiff, the

city of Peoria, had instituted a suit against the Peoria Transit Lines to recover payments due under the franchise. Thereafter, on July 15, 1955, a supplemental complaint was filed by the city of Peoria alleging the transfer of the assets and liabilities of Peoria Transit Lines to Peoria City Lines. Subsequent to the filing of the supplemental complaint the suit was defended by the Peoria City Lines. In that prior action a summary judgment was entered on July 14, 1956, awarding the plaintiff the amount due and interest thereon. On appeal this court affirmed that judgment in May, 1957, (*City of Peoria* v. *Peoria Transit Lines, Inc.,* 11 Ill.2d 520,) and the judgment was satisfied on April 21, 1958. It is this prior litigation that plaintiff relies upon as barring further consideration of the validity of the franchise ordinance on the grounds of *res judicata* or estoppel by verdict.

Shortly after our decision, defendant, on July 12, 1957, sought an increase in fares from the Illinois Commerce Commission, listing as an operating expense the franchise fee due the city of Peoria. In February, 1958, defendant requested the Peoria city council to appoint a citizens committee to make recommendations with regard to modifying the franchise fee in the light of defendant's financial condition. The committee, however, recommended that there be no change in fees.

It appears further from the affidavit of the Peoria corporation counsel and the depositions of the supervisor of parking, the police captain, the traffic engineer, and the director of streets and sewers, that plaintiff sustained certain losses of revenue and incurred expenses as a result of defendant's operations under the franchise. The removal of 100 parking meters from the loop area to provide bus stops at the time the ordinance was adopted resulted in a loss of revenue of approximately $18,000, and the removal of some 28 more meters in 1949 resulted in further losses. At the same time the city had to erect bus-stop signs, police these bus stops and loading zones, establish bus lanes, paint

and maintain additional stripes on main arteries traversed by the buses, make certain traffic studies in connection with establishing bus routes, and participate in other fact-finding activities. Furthermore, since defendant's buses operated over 40 miles of paved city streets and travelled approximately two million bus miles per year over those 40 miles of pavement, it was estimated on the basis of a proportion of the city's total street repair costs that some $20,000 a year was expended for the repair of streets over which the buses operated. Defendant objected to the mode of computing repair costs and insisted that many of these costs were not costs of regulation and had no bearing on the reasonableness of the franchise fee.

On the basis of the pleadings and depositions which were stipulated to serve as counteraffidavits, the circuit court entered a summary judgment requiring defendant to pay plaintiff $86,647.44 under the franchise ordinance for the period from May 1, 1955 through December 31, 1958, and $11,456.53 as interest thereon.

On this direct appeal by defendant we shall determine first whether defendant's attack on the ordinance as an arbitrary exercise of plaintiff's regulatory power is barred by either the doctrine of *res judicata* or estoppel by verdict, and then consider the issues relating to the propriety of the summary judgment and allowance of interest.

Our law is replete with analyses of the scope and distinction between the doctrines of *res judicata* and estoppel by verdict, which are both designed to prevent relitigation. (*City of Elmhurst* v. *Kegerreis,* 392 Ill. 195; *Chicago Historical Society* v. *Paschen,* 9 Ill.2d 378; *Harding Co.* v. *Harding,* 352 Ill. 417.) Under the doctrine of *res judicata,* which is applicable only where the former suit was between the same parties or their privies and involved the same cause of action, the former judgment is conclusive not only as to all questions actually decided, but all questions which might properly have been litigated and determined

in that action. Where the prior cause of action was different, the doctrine of estoppel by verdict applies, and it bars only those questions actually decided in the prior suit.

In determining the applicability of either of these doctrines to the case at bar we must examine first our prior decision in 11 Ill.2d 520. There we affirmed a judgment allowing plaintiff to recover from Peoria Transit Lines the sums due under the same franchise ordinance involved herein, for the period from January 1, 1954 to May 4, 1955, plus interest, on the ground that the ordinance was a valid exercise of the city's power to regulate the use of its streets. We rejected defendant's challenge of the constitutionality of the ordinance, as well as its contention that plaintiff breached its contract obligations under the ordinance.

Since the pleadings and affidavits here indicate that the present defendant, Peoria City Lines, did in fact conduct the defense of the prior case, and is the assignee of all the assets and liabilities of the Peoria Transit Company, including the franchise ordinance under which it has continuously been operating, we are satisfied that there is identity of parties or their privies in the prior and present cases. *Smith* v. *Womack's Estate,* 17 Ill. App. 2d 264; 50 C.J.S. Judgments, 327.

With respect to the identity of the causes of action, it is evident that both actions involved recovery of sums due under the same franchise ordinance. The first action covered the period from January, 1954 to May, 1955, and the present claim includes the period from May, 1954, through December, 1958. In denying the applicability of the doctrine of *res judicata,* defendant contends that the causes of action are. different, under the principle that a cause of action for taxes for one year is not the same or identical to a cause of action for taxes for subsequent years. *Turn Verein Lincoln* v. *Paschen,* 20 Ill.2d 229;

*People* v. *Levy Circulating Co.* 17 Ill.2d 168; *Chicago Historical Society* v. *Paschen,* 9 Ill.2d 378.

We are cognizant of that principle, but in our judgment it is neither determinative nor applicable in this case. The ordinance here is not a tax law. This is evident not only from its title identifying it as "An Ordinance granting a franchise to the Peoria Transportation Company, an Illinois Corporation, its successors and assigns, to maintain and operate a motor bus system for the transportation of passengers for hire * * * upon the streets of the City of Peoria," but also from the language of our prior decision. We specifically stated that it was a "typical public utility franchise," enacted as a regulatory rather than a revenue measure, and we distinguished it and the cases involving revenue ordinances. *City of Peoria* v. *Peoria Transit Lines, Inc.,* 11 Ill. 2d 520, 523, 524.

The instant case is more closely analogous to the cases involving successive actions for installments under special assessment ordinances or under leases, as plaintiff contends. The doctrine of *res judicata* has been applied in those cases. A determination of the validity of the ordinance or of the lease in an action for one installment is deemed conclusive in actions for subsequent installments or rentals as to all questions which were or might have been raised, even though the specific objection was not made in the prior litigation. *Martin* v. *McCall,* 247 Ill. 484; *Marshall* v. *Grosse Clothing Co.* 184 Ill. 421; *Louisville, New Albany and Chicago Railway Co.* v. *Carson,* 169 Ill. 247; *Gross* v. *People ex rel. Raymond,* 193 Ill. 260; *Lusk* v. *City of Chicago,* 211 Ill. 183.

In this connection the court stated in *Martin* v. *McCall* at p. 487: "The validity of the ordinance under which this improvement was constructed was involved in the case of *People* v. *Martin,* [243 Ill. 284,] and this court held it valid. That case conclusively settles the validity of the ordinance

*regardless whether the specific objection to said ordinance now insisted upon was raised in that case or not.* The validity of the ordinance cannot be thus attacked by the same parties by piecemeal although the action may be in a different form. (*Lusk* v. *City of Chicago,* 211 Ill. 183.)" (Italics added.)

However, even if analogy were made to the tax cases, as defendant insists, this would mean only that the causes of action would be deemed different, and hence, the doctrine of estoppel by verdict, rather than *res judicata,* would apply. The prior judgment would then be conclusive only of the issues actually raised and decided there. *Turn Verein Lincoln* v. *Paschen,* 20 Ill.2d 229, 231.

While defendant has argued in both cases that this franchise ordinance is an arbitrary exercise of the city's regulatory and taxing power, in its attack here defendant purports to add another ground in support of the invalidity. Seizing upon a fragment of a sentence in our prior opinion, defendant now asserts that the amount charged under the ordinance, based upon gross receipts, exceeded the cost of regulation, and was therefore arbitrary and rendered the ordinance void.

A careful reading of our prior opinion indicates that this argument was rejected. In 11 Ill.2d 520, we stated at p. 524: "That argument [that a fee based on gross receipts was arbitrary] is not available here, for in the case of a company operating moving vehicles on the streets, it is not unreasonable to assume a direct correlation between gross receipt from fares and the intensity of use of the streets. Neither the pleadings nor the proof in the present case suggest that the amount charged exceeded the cost of regulation, *and in any case, the amount charged was that to which the defendant had agreed.*" (Italics added.)

Not only did we specifically sustain the reasonableness of franchise fees based on a percentage of gross receipts in view of the nature of defendant's operation and use of the

streets, but we indicated that even if the charges exceeded the cost of regulation, the fact that defendant had agreed to that charge was determinative. We promulgated no new principle of law as to the standard for imposing fees, or in recognizing the contractual aspects of the ordinance. Therefore, defendant's allegedly new argument that the fees are arbitrary because they exceed the cost of regulation is not only a striking example of piecemeal litigation condemned in *Martin* v. *McCall*, 247 Ill. 484, 489, but completely disregards that portion of our prior decision disposing of it.

Under this analysis, since defendant's attack on the validity of the ordinance has been adjudicated in prior litigation between the same parties or their privies, and was clearly barred under the doctrine of estoppel by verdict, there was no factual issue to try and the summary judgment was properly entered. Ill. Rev. Stat. 1959, chap. 110, par. 57.

With respect to the propriety of imposing interest here plaintiff contends that it was warranted under the Interest Act, (Ill. Rev. Stat. 1955, chap. 74, par. 2) and under the doctrine of *res judicata*. The Interest Act allows interest "for all moneys after they become due * * * on money withheld by an unreasonable and vexatious delay of payment." We find nothing in the statute itself, nor in the case law, including the cases cited by defendant, which precludes its application to moneys due under a franchise ordinance. However, whether interest is payable under that provision of the statute depends upon the circumstances of each particular case (*People ex rel. Carpentier* v. *Central and Southern Truck Lines, Inc.,* 17 Ill.2d 120), and the duration and grounds of the delay are material factors. *Geohegan* v. *Union Elevated Railroad Co.* 266 Ill. 482; *Daniels* v. *Osborn,* 75 Ill. 615; *City of Chicago* v. *Tebbetts,* 104 U.S. 120, 26 L. ed. 655.

In the *Central and Southern Truck Lines* case the de-

fendant refused for several years to pay the balance of its 1952 license fee on the ground that it was not the owner of the trucks, even though the validity of the applicable amendment to the licensing act had been determined in April, 1953. The court, after noting the prolonged delay and the fact that defendant's arguments would lead to absurd results, imposed interest on the ground that defendant's refusal to pay "was not only unreasonable but vexatious and motivated solely by a desire to postpone judgment day."

In the instant case the validity of the ordinance was sustained by this court in May, 1957, in an action which defendant itself defended. During the ensuing years defendant has obviously recognized its liability under that ordinance, for it included the amount payable thereunder as an operating expense in its petition for a fare increase before the Illinois Commerce Commission and endeavored to have the fees reduced at the recommendation of the citizens committee. Nevertheless, it is undisputed that defendant has made no payments under the ordinance from May, 1955, to the date suit was filed, nor subsequent thereto. At the same time it has continued to enjoy the benefits of that exclusive franchise by operating its bus lines.

In our opinion such conduct is even more unreasonable than that of the defendant in the *Central and Southern Truck Lines* case, and could properly be deemed "unreasonable and vexatious" within the terms of the Interest Act. Since these undisputed circumstances are set forth in the pleadings and affidavits, they constitute ample justification for the imposition of interest in this case. It is therefore, not necessary to consider any further grounds asserted by plaintiff for allowing interest here.

Under our analysis of this cause the summary judgment entered by the circuit court was in accordance with law and is affirmed.                        *Judgment affirmed.*