LODGE NO. 822, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS UNION, Plaintiff-Appellant, v. THE CITY OF QUINCY, Defendant-Appellee.

Fourth District   No. 4—84—0556

Opinion filed October 3, 1985.

GREEN, P.J., dissenting.

Terrence J. Anastas, of Keefe, Gorman & Brennan, of Quincy, for appellant.

Donald G. Adams, of Quincy, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

On October 27, 1983, plaintiff, Lodge No. 822, International Association of Machinists and Aerospace Workers Union, filed suit in the circuit court of Adams County against defendant, city of Quincy. The complaint alleged the existence of a "Working Agreement" (agreement) between the parties, a copy of which was attached to the complaint. That document recognized plaintiff as the representative of all employees of defendant who are members of plaintiff union, except for certain persons holding supervisory positions. Article VII of the agreement provides for a procedure for (1) handling grievances between "the City and the Union, or between the City and any employee covered by the Agreement," and (2) eventual arbitration of certain grievances which are not otherwise resolved. The complaint requested that defendant be required to submit a certain dispute to arbitration under the Uniform Arbitration Act (Ill. Rev. Stat. 1983,

ch. 10, par. 101 *et seq.*).

The original complaint was silent as to the nature of the matters for which arbitration was sought. An amended complaint stated only that plaintiff had initiated grievances on August 26, 1983, and October 12, 1983, "for one Donald D. McCutcheon," with the grievances having been made "to the Sanitation Department of the defendant." Each of the parties made motions for summary judgment. However, without objection, the parties proceeded to a hearing by the trial court on the merits of the case. The trial court considered affidavits of the parties which had been submitted in support of their motions for summary judgment. Plaintiff appeals from a judgment "on the merits" for defendant, the result of which was to deny the request for arbitration. We affirm.

An affidavit of the deputy mayor of the city attached to a motion by defendant for summary judgment stated, among other things, that (1) the McCutcheon grievances relate "to part-time employees who are compensated by a rate set by the City of Quincy and not a collective bargaining agreement and further do not receive fringe benefits of a full-time employee *** and further said part-time employees were not members" of plaintiff; (2) only full-time employees have a right to join plaintiff; (3) by the customs of the agreement, only full-time employees were covered by the agreement; and (4) the practice had been to treat all employees who work less than 1,000 hours per year as part-time, or temporary, employees.

A counteraffidavit by plaintiff's business representative stated (1) the custom and usage over the years had not been to treat those working less than 1,000 hours per year as part-time employees, but only to treat those individuals as part-time who worked "sporadically, and then only when a regular employee of [the sanitation department] is absent due to sickness, leave, or vacation," and (2) the gist of the dispute was that the city was employing people in the sanitation department "on a continuing week by week, or month by month basis to fill vacancies created by retirement or resignation" without having complied with the agreement "thereby depriving those employees of the benefits of such contract and *depriving the Union of the occasion to enlist such employees as members*" (emphasis added).

The record indicated that when vacancies occurred in the sanitation department, the city was replacing those workers with workers who were temporary and were not intended to work for more than 1,000 hours before leaving the employment. The city's explanation for this policy was that the city was contemplating contracting some of the work performed by the sanitation department and might not have

a permanent need for these workers. These workers did not receive wages which are as high as the union scale nor did they receive certain fringe benefits. Plaintiff maintains that the city was continuing the foregoing policy for an unreasonable period of time. Defendant asserts that plaintiff is not entitled to arbitration because (1) the temporary workers are not covered by the agreement; and (2) the policy of hiring temporary workers is not a matter subject to arbitration by the terms of the agreement.

The trial court spent considerable time at the hearing to determine whether plaintiff was objecting on behalf of the temporary employees because the city's practice was unfair to the temporary employees who did not receive fringe benefits, or whether it was objecting on behalf of the union because the practice was unfair to it. In explaining its decision to rule in favor of the defendant, the trial court stated:

> "A successful argument could perhaps be made that non-Union temporary or part-time employees are impliedly covered by the language of the contract; however, such a finding is not necessary since the nature of the grievance is not one for which arbitration is provided in the subject contract."

Accordingly, we need not determine whether temporary employees' have a right to such arbitration because, in any event, the plaintiff can do so in its own behalf as provided by the terms of the agreement.

Article VII of the agreement provides for a grievance procedure for:

> "[A]ny dispute between the City and the Union, or between the City and any employee covered by this Agreement, concerning the interpretation, application, or claimed violation of any of the provisions of this Agreement."

Article VII sets forth a step-by-step procedure for the handling of grievances and then provides for arbitration in the event that grievances are not resolved. Article VII, section 2, states in part:

> "The jurisdiction of arbitration shall be limited to grievances arising out of the interpretation, application or claimed violation of this Agreement. The arbitrator shall not have jurisdiction to arbitrate provisions of a new agreement, nor to add to, subtract from or modify this Agreement or any supplement hereto."

The above provision does limit the prerogative and jurisdiction of the arbitrator.

Article IX of the agreement contains provisions designated as

"General." Section 14 states:

"When a new job classification is established or an existing one is changed, the City will submit a description in writing and a proposed wage assignment to the Union within thirty (30) days. Any unresolved difference of opinion between the parties in regard to wages will be subject to the grievance procedure."

Listed at the end of the agreement without designation as to being part of a particular article are a large number of descriptions of various jobs; and a listing of job titles and the wage range ascribed to each. These descriptions do not refer to whether the jobs should be filled by temporary or full-time employees. The agreement does not contain any provision with reference to the policy of hiring temporary employees. However, plaintiff maintains that the alleged practice of hiring temporary employees in the sanitation department constitutes a violation of article IX, section 14, because it is a change in job description which was made without compliance with the terms of section 14. This is the question which plaintiff seeks to arbitrate.

Defendant emphasizes that no policy concerning temporary workers is stated in the agreement. It maintains that its right to adopt a policy in regard to the hiring of temporary employees is retained by the city under the terms of the following provisions of sections 1 and 4 of article II of the agreement, which state:

"The City retains the sole right to manage the plant and direct the working force; to maintain order and efficiency in its plants and operations; to hire, layoff, assign, transfer, promote and determine the qualifications of employees; to determine the starting and quitting time and the number of hours to be worked, subject only to such regulations governing the exercise of these rights as expressly provided in this Agreement.

* * *

Any of the rights, powers and authority the City had prior to entering into this Agreement are retained by the City, except as *expressly and specifically abridged, delegated, granted or modified by this Agreement.*" Emphasis added.

The question of the operation of arbitration provisions of collective bargaining labor agreements is set forth with clarity by the Second District in an opinion by Justice Lindberg in *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 389 N.E.2d 647. There, a firefighters union sought to arbitrate the question of additional pay for firefighters when they were temporarily assigned to duties of acting officers. The provision of the collective bargaining agreement between

the parties set forth a right of arbitration which was limited to matters concerning "express provisions" of the collective bargaining agreement. (71 Ill. App. 3d 370, 375, 389 N.E.2d 647, 651.) As that agreement did not expressly refer to additional pay for firemen temporarily assigned to higher responsibilities, the court held that the question was not subject to arbitration.

The *Croom* opinion explained the special treatment given to arbitration arising from labor agreements resulting from three cases, often referred to as the Steelworkers Trilogy, decided by the United States Supreme Court in 1960 (*United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343; *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347; *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358). These cases set forth a doctrine that arbitration was looked upon as a uniquely suitable procedure for settling labor disputes and that, accordingly, in cases of doubt, courts should decide in favor of arbitration. The *Croom* court explained that arbitration provisions of collective bargaining agreements are given a much broader interpretation than are those provisions in commercial agreements. That court pointed out that the holding of this court in *Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 226, 248 N.E.2d 289, 290, that the requirement for arbitration must be in "crystal clear language unextended and unenlarged either by construction or by implication," is not applicable to collective bargaining agreements.

In *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 386 N.E.2d 47, also cited in *Croom,* the supreme court gave general approval to the holding of the Trilogy decided by the United States Supreme Court in 1960, which required a broad interpretation to be given to arbitration clauses in collective bargaining agreements.

We recognize, approve, and follow the foregoing principles. However, the mere existence of a dispute between the employer and the collective bargaining representative of the employees is insufficient to make the matter in dispute subject to arbitration. In *American Manufacturing Co.,* the court stated that the party moving for arbitration need not be correct in its contention, but the issue is whether the claim is one "which on its face is governed by the contract." (*United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 568, 4 L. Ed. 2d 1403, 1407, 80 S. Ct. 1343, 1346.) We see

nothing on the face of the instant dispute to indicate that it is governed by the contract. The agreement contains nothing about the propriety of hiring temporary workers. Nothing stated in the portion concerning "Job Descriptions" refers to whether the positions can be filled by temporary employees, nor has anything in that portion been called to our attention which suggests any limitation on the prerogatives of the city in that respect.

Article IX, section 14, provides that when a new job classification is established, or an existing one is changed, the city will submit a description in writing and a proposed wage assignment to the union within 30 days. The city, in setting up temporary employment, is not setting up a new job classification or changing an existing one and, therefore, the matter which is the subject of this grievance does not fall within the terms of this particular section of the agreement. Section 14 simply does not make the employer conduct complained of a matter for the grievance procedure. Section 14 indicates that any *unresolved difference of opinion* between the parties *in regard to wages* will be subject to the grievance procedure. Because a grievance procedure is allowed as to wages does not, of itself, mean that there is a right to arbitration as to the instant grievance, which does not fall within the primary subject of this provision of the agreement.

Moreover, article II, section 1, of the agreement reserves to the city "the sole right *** to determine the starting and quitting time and the number of hours to be worked, subject only to such regulations governing the exercise of these rights as *expressly provided* in this Agreement." (Emphasis added.) Article I, section 4, reserves to the city all "rights, powers and authority" except those *"expressly and specifically* abridged, delegated, *granted or modified"* by the agreement. (Emphasis added.) In *Croom,* the court held that the dispute there was not subject to arbitration because only the "express provisions" of the collective bargaining agreement were subject to arbitration. Here, the arbitration provision did not say that only the "express provisions" of the contract were subject to arbitration, but it did state that the arbitrator could not "add to, subtract from or modify the agreement or any supplement thereto." We find that the language of the agreement, as with other contracts, must be read as a whole, and that the express reservation of rights to the city in article II limits the broad language of the grievance and arbitration procedure in article VII. In so finding, we have considered the recent opinion of the Second District Appellate Court in *International Association of Machinists & Aerospace Workers, District Lodge No. 140 v. Cheshire/A Xerox Co.* (1984), 125 Ill. App. 3d 350, 354-56, 465 N.E.2d

981, 984-85, but we do not find the reasoning therein applicable since the language appearing in that opinion differs from that in the instant agreement.

The *Croom* court stated that "while there is a presumption of arbitrability, arbitration remains 'a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit' " and "[c]learly not all grievances are subject to arbitration." *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 375, 389 N.E.2d 647, 651.

The *American Manufacturing Co.* opinion also stated, "[t]he function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator." (*United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 567-78, 4 L. Ed. 2d 1403, 1407, 80 S. Ct. 1343, 1346.) However, some nexus between the dispute and the provisions of the agreement is necessary, particularly when, as here, the collective bargaining agreement limits the authority of the arbitrator and reserves certain rights to management, thereby limiting the inferences that may be drawn from the express words of the bargaining agreement. That nexus is missing here. The trial court was correct in finding the nature of the grievance is not one for which arbitration is provided in the subject contract.

Accordingly, we affirm the trial court's judgment for the defendant.

Affirmed.

TRAPP, J., concurs.

PRESIDING JUSTICE GREEN, dissenting:
I dissent.

The temporary workers whose status and pay is in dispute worked full days and worked each and every work day during their period of employment. I deem a sufficient nexus between their status and pay and the agreement to exist because of the provisions of article I, section 3, of the agreement which provides that its various parts "shall be applied equally to all employees in the bargaining unit" without regard to whether the employees are Union members. The only portion of the agreement which provides for differentiation between nonsupervisory employees in regard to the length of their employment is article III, section 1, which states that *"all* new employees" (emphasis added) are in a probationary status until they have

worked for 30 days. The city does not deny that the employees in question have worked for more than 30 days.

The pages attached to the agreement, as referred to by the majority, set forth a three-step wage rate range for each "job classification," including that in which the temporary employees were functioning. It is not clear from the record on appeal whether other "new" employees, not regarded by the city as "temporary," were paid according to this wage rate range during their probationary period.

As does the majority, an arbitrator may consider past practices, and conclude that the city and the union never intended for employees such as those involved here to have the protection of article I, section 3, providing for equal treatment for employees. However, that is a question "concerning the interpretation, application [and] claimed violation" of article I, section 3, and thus subject to arbitration under the terms of article VII of the agreement. A decision in favor of the union would interpret the agreement consistently with what it would appear on its face to provide. If the past practice is as contended by the city, an interpretation in its favor would properly consider the custom and dealing between the parties. Either way, the decision would not be one which makes "a new agreement" or adds or subtracts from the existing one in violation of article VII, section 2, of the agreement.

I would reverse the decision of the circuit court and remand with directions to order arbitration.