MONMOUTH PUBLIC SCHOOLS, DISTRICT NO. 38, Plaintiff-Appellee, v. ROSEMARY PULLEN *et al.,* Defendants-Appellants.

Third District   No. 3—84—0732

Opinion filed December 13, 1985.—Rehearing denied March 25, 1986.

GREEN, J., specially concurring.

Drach & Deffenbaugh, P.C., of Springfield, for appellants.

Richard L. Whitman, of Stansell, Critser & Whitman, of Monmouth, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

Plaintiff Monmouth Public Schools, District No. 38 (district), filed this action seeking a permanent stay of a pending grievance arbitration based on section 2 of "An Act relating to arbitration and to repeal an Act therein named" (Act) (Ill. Rev. Stat. 1983, ch. 10, par. 102), claiming the grievance was not arbitrable and was barred under the doctrines of *res judicata* and collateral estoppel by a prior arbitration award between the parties. After a hearing and briefs, the circuit court entered summary judgment in favor of the district and against

defendants, finding the arbitration barred by the *res judicata* effect of the prior arbitration award. Defendants appeal from the judgment of the circuit court of Warren County, arguing: (1) under the Act, a stay order may be issued only on a showing that there is no agreement to arbitrate; (2) questions of arbitrability are to be decided initially by the arbitrator and not the circuit court; (3) questions of *res judicata* and collateral estoppel should be treated as matters of "procedural arbitrability," and decided by the arbitrator; (4) a prior arbitration award does not bar a subsequent arbitration on the ground of collateral estoppel, unless the prior arbitration involved the same parties and issues and was rendered after a full and fair hearing on the merits; and (5) the commencement of each new school year gives rise to a new claim by the grievant, MEA and other teachers, which is not barred by the prior arbitration. We affirm.

The record contains the arbitration opinion and award in Board of Education, School District No. 38, Warren County, Monmouth, Illinois, and Monmouth Education Association, AAA 51 39 0145 83B, dated August 9, 1983. The arbitration award shows that the underlying grievance, filed December 21, 1982, involved the complaint that "Rosemary Pullen was denied a credit of one year on the salary schedule for 1982-1983 after being on maternity leave for the first semester of school year 1981-1982." The grievance further alleged this was not in accord with the usual practice of the district of giving credit, or "step advancement," for a full year on the schedule for having taught less than a full year. It requested the board remain consistent in such matters and grant Pullen an additional one-year credit on the salary schedule *for 1982-83*. The arbitrator concluded that this grievance had not been timely brought under the four-step procedure of the collective bargaining agreement, and ruled the grievant's complaint was not arbitrable.

The grievance which underlies this appeal, dated October 3, 1983, states:

> "Rosemary Pullen was denied a credit of one year on the salary schedule for 1982-1983 after being on a maternity leave for the first semester of school year 1981-1982. *She has thus far also been denied advancement to the proper step for the school year 1983-1984.*" (Emphasis added.)

This grievance requests:

> "That the Board remain consistent in matters of this nature *and grant Rosemary Pullen an additional one year credit on the salary schedule for 1983-1984.* Furthermore, that all other teachers affected in a like manner be properly placed on the

salary schedule." (Emphasis added.)

In the order on appeal, the trial judge stated that he determined "that the relitigation of Pullen's advancement on the salary schedule attributable to the 1981-1982 school year is barred by the doctrine of res judicata."

Section 1 of the Act (Ill. Rev. Stat. 1983, ch. 10, par. 101) provides "[a] written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract, ***." Section 2 of the Act provides in pertinent part:

> "(b) On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. That issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.
>
> * * *
>
> (e) An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown." (Ill. Rev. Stat. 1983, ch. 10, par. 102(b), (e).)

In *Lodge No. 822, International Association of Machinists & Aerospace Workers Union v. City of Quincy* (1985), 137 Ill. App. 3d 425, this court discussed the general principles governing arbitrability determinations. Special treatment is accorded arbitration arising from labor agreements as a result of three cases, often referred to as the Steelworkers Trilogy, decided by the United States Supreme Court in 1960 (*United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343; *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347; *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358). These cases, decided under Federal statute, stated that arbitration was regarded as a uniquely suitable procedure for settling labor disputes and, accordingly, in cases of doubt, courts should decide in favor of arbitration. As a result, arbitration provisions of collective bargaining agreements are to be given a broader interpretation than are those provisions in commercial

agreements (*Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 389 N.E.2d 647); and the general requirement that the agreement to arbitrate must be in "crystal clear language unextended and unenlarged either by construction or by implication" (*Harrison F. Blades, Inc. v. Jarman Memorial Hospital Building Fund, Inc.* (1969), 109 Ill. App. 2d 224, 226, 248 N.E.2d 289, 290), applicable in the context of commercial agreements, is not applicable in the collective bargaining context.

■■ ■ Defendants first argue that (1) a stay order may be issued only on a showing that there is no agreement to arbitrate; and (2) there is an agreement to arbitrate disputes here. While there is a presumption of arbitrability, arbitration remains a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. (*Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 375, 389 N.E.2d 647, 651.) Whether the subject matter of the grievance is within the *scope* of the agreement to arbitrate may be tested preliminarily in the courts (see, *e.g., Board of Trustees v. Cook County College Teachers Union, Local 1600* (1976), 62 Ill. 2d 470, 477-78, 343 N.E.2d 473, 477 (held, matter of faculty promotions is nondelegable power of board which it cannot be compelled to submit to arbitration)), as provided in section 2 of the Act (see *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 389 N.E.2d 647; *Lodge No. 822, International Association of Machinists & Aerospace Workers Union v. City of Quincy* (1985), 137 Ill. App. 3d 425). The defendants' argument was rejected in another context in *J.F. Inc. v. Vicik* (1981), 99 Ill. App. 3d 815, 819-21, 426 N.E.2d 257, 260-62 (policy favoring joinder of all related causes). (But see *Kelso-Burnett Corp. v. Zeus Development Co.* (1982), 107 Ill. App. 3d 34, 437 N.E.2d 26; *J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 889; *First Condominium Development Co. v. Apex Construction & Engineering Corp.* (1984), 126 Ill. App. 3d 843, 467 N.E.2d 932.) *Vicik* quotes *County of Jefferson v. Barton-Douglas Contractors, Inc.* (Iowa 1979), 282 N.W.2d 155, 159, stating the principle that " '[t]he prospect of multiple proceedings carrying a potential for inconsistent findings provides a basis for overriding the freedom to contract for arbitration.' " (99 Ill. App. 3d 815, 819, 426 N.E.2d 257, 260.) It is the responsibility of the courts to determine whether a union and employer here agreed to arbitration, as well as the scope of the arbitration clause. (*International Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc.* (1972), 406 U.S. 487, 491, 32 L. Ed. 2d 248, 252, 92 S. Ct. 1710, 1713.) We hold that the issue of whether a dispute is beyond the scope of the agree-

ment to arbitrate, by reason of a prior arbitration, may properly be tested preliminarily in the courts under section 2 of the Act; the district was not required to submit to arbitration and contest arbitrability first in that forum.

■ Defendants next argue that questions of arbitrability should be left to the parties and the arbitrator in the first instance. Defendants cite supporting case authority both in the commercial context (*School District No. 46 v. Del Bianco* (1966), 68 Ill. App. 2d 145, 154-55, 215 N.E.2d 25, 30; *Lester Witte & Co. v. Lundy* (1981), 98 Ill. App. 3d 1100, 1104, 425 N.E.2d 1, 3), and the collective bargaining context (see, *e.g., Board of Education v. Johnson* (1974), 21 Ill. App. 3d 482, 492, 315 N.E.2d 634, 642; *Board of Education v. Illinois Education Association* (1981), 100 Ill. App. 3d 1026, 427 N.E.2d 789). These cases did not, however, involve a demand for arbitration over a matter which had been the subject of a prior arbitration.

The district argues that under the Act the court is the appropriate tribunal to determine questions involving the *res judicata* and collateral estoppel effect of a prior arbitration award, relying on decisions in *Rembrandt Industries, Inc. v. Hodges International, Inc.* (1976), 38 N.Y.2d 502, 381 N.Y.S.2d 451, 344 N.E.2d 383, *In re Application of Weinberger* (1973), 41 App. Div. 2d 620, 340 N.Y.S.2d 720, *C & O Development Co. v. American Arbitration Association* (1980), 48 N.C. App. 548, 269 S.E.2d 685, and *Kemling v. Country Mutual Insurance Co.* (1982), 107 Ill. App. 3d 516, 437 N.E.2d 1253. We agree.

In *Kemling,* the plaintiff sought a declaration as to the legal effect, if any, of an earlier arbitration on the pending arbitration, which presented a dispute admitting of immediate and definitive determination pursuant to the declaratory judgment statute; no relief was sought by the plaintiff under the Act. The circuit court held defendant was estopped from contesting a specific issue in any arbitration hearing. Defendant appealed. *Kemling* stated:

> "This question has been addressed by the reviewing courts in New York, upon whose arbitration act the uniform act was patterned. (Ill. Ann. Stat., ch. 10, par. 30, Introductory Note, at 401 (Smith-Hurd 1975).) In *Rembrandt Industries, Inc. v. Hodges International, Inc.* (1976), 38 N.Y.2d 502, 504, 381 N.Y.S.2d 451, 452, 344 N.E.2d 383, 384, the court reasoned that while review of an arbitration award was limited in the trial court, the question of the scope of the award and its *res judicata* applicability in a subsequent arbitration was an issue properly determinable by the court and not by the arbitrators.

See also *In re Application of Weinberger* (1973), 41 App. Div. 2d 620, 340 N.Y.S.2d 720." (107 Ill. App. 3d 516, 520-21, 437 N.E.2d 1253, 1257.)

Although Illinois reviewing courts had not previously addressed the question, other jurisdictions had concluded that collateral estoppel does apply to an issue of fact actually contested and decided in an earlier arbitration, if that issue was properly before the arbitrators and the party against whom the estoppel was asserted had a full and fair opportunity to contest it at that time. The court found it unnecessary to decide whether collateral estoppel would apply between successive arbitrations in Illinois, since the doctrine was inapplicable given the facts of the case.

*Rembrandt* stated the controlling principles as follows:

"It is settled law that the doctrine of *res judicata* is applicable to issues resolved by earlier arbitration (see, *e.g.,* 23 Carmody-Wait, 2d, N.Y. Practice, Arbitration, sec. 141:151, p. 80, and cases cited). *** The scope of the award and, therefore, its *res judicata* effect, is an issue properly determinable by the court and not the arbitrators [citations]." (38 N.Y.2d 502, 504, 381 N.Y.S.2d 451, 452, 344 N.E.2d 383, 384.)

In *C & O Development,* the first issue concerned the justiciability of the cause, *i.e.,* whether the trial court had the authority to enjoin arbitration on the grounds of *res judicata* or collateral estoppel. In that case, as in this, the defendant argued that North Carolina's statute (comparable to section 2 of the Act) limited the basis upon which a court may stay arbitration proceedings solely to the issue of whether a written agreement to arbitrate a particular dispute exists, and that all other matters, including factual and legal issues, are the proper subject matter of the arbitration itself. *C & O Development* rejected that view, stating:

"We do not believe that in enacting the Uniform Act, the General Assembly intended to grant arbitrators the authority to determine the *res judicata* or collateral estoppel effect of a prior judgment. The arbitrability of various issues and disputes under the Uniform Act has, in general, been determined to be a matter for the courts to decide. See, *e.g., Ferris College v. Faculty Association,* 72 Mich. App. 244, 249 N.W.2d 375 (1976), *cert. denied,* 399 Mich. 861 (1977); *Layne-Minnesota Co. v. Regents of the University,* 266 Minn. 284, 123 N.W.2d 371 (1963). We hold that it was within the authority of the trial court to determine whether the subject matter of the demand for arbitration had been previously litigated between the parties and reduced

to a judgment binding upon them." (48 N.C. App. 548, 552, 269 S.E.2d 685, 687-88.)

The defendant in *C & O Development* next maintained, as is argued here, that the arbitration was not barred under the doctrines of *res judicata* or collateral estoppel because the issue in the proposed arbitration had not been fully litigated and determined between the parties in the prior Virginia court proceedings. The court rejected that view, discussing the basic principles of *estoppel by judgment,* whereunder a judgment operates as an estoppel not only as to the issues actually reduced to judgment in the former proceeding, but all questions which might properly have been litigated and determined in that action, which are "merged" into the prior judgment.

In considering the issues raised by defendants, our own research has disclosed that the principle stated in *Rembrandt* has been applied by New York courts to arbitration in the collective bargaining context. (See, *e.g., B.O.W. Cleaning Corp. v. Doe* (1981), 84 App. Div. 2d 527, 443 N.Y.S.2d 614; *In re Arbitration between David Associates & Bevona* (1985), 109 App. Div. 2d 623, 486 N.Y.S.2d 188; *O'Riordan v. Suffolk Chapter, Local No. 852, Civil Service Employees Association, Inc.* (1982), 89 App. Div. 2d 558, 452 N.Y.S.2d 114; *cf. Menkes v. City of New York* (1982), 91 App. Div. 2d 654, 457 N.Y.S.2d 99.) In *B.O.W. Cleaning Corp.,* the reviewing court found that as to petitioner B.O.W. the asserted defense of *res judicata* was timely raised on application to stay arbitration and barred the second attempt to arbitrate an already decided issue.

We conclude that under section 2 of the Act, the defense of *res judicata* may be timely raised by a motion to stay arbitration, interposing a bar against a second attempt to arbitrate an already decided issue. (*Rembrandt Industries, Inc. v. Hodges International, Inc.* (1976), 38 N.Y.2d 502, 381 N.Y.S.2d 451, 344 N.E.2d 383; *B.O.W. Cleaning Corp. v. Doe* (1981), 84 App. Div. 2d 527, 443 N.Y.S.2d 614; *C & O Development Co. v. American Arbitration Association* (1980), 48 N.C. App. 548, 269 S.E.2d 685; *In re Arbitration Proceeding between Conforti & Eisele, Inc. v. William J. Scully, Inc.* (1983), 98 App. Div. 2d 646, 469 N.Y.S.2d 400.) It is for the courts to decide the *res judicata* or collateral estoppel effect to be given a prior arbitration award.

Defendants also contend that section 2 of the Act ought to be strictly construed in view of public policy favoring binding arbitration as the method for orderly resolution of labor disputes, as evidenced by provisions by "An Act to establish the right of educational employees to organize and bargain collectively, to define and resolve unfair prac-

tice disputes and to establish the Illinois Educational Labor Relations Board to administer the Act" (see Ill. Rev. Stat., 1984 Supp., ch. 48, pars. 1701 (policy), 1710(c) (collective bargaining agreement shall contain a grievance resolution procedure and shall provide for binding arbitration of disputes concerning administration or interpretation of bargaining agreement)). This argument overlooks the basic purpose of binding labor arbitration, *i.e.*, in order to give finality to the decision of the arbitrator, the parties have agreed to be bound by his determination. The overriding interest in finality which inheres in the submission of disputes to binding labor arbitration has led to circumscribed judicial review of the merits of an arbitration award (*Board of Trustees v. Cook County College Teachers Union, Local No. 1600* (1979), 74 Ill. 2d 412, 386 N.E.2d 47); it also supports the stay order issued by the court below.

■ Defendants' third argument is that "procedure" questions which grow out of a dispute and bear on its final disposition are left to the arbitrator (*John Wiley & Sons, Inc. v. Livingston* (1964), 376 U.S. 543, 11 L. Ed. 2d 898, 84 S. Ct. 909), including such matters as timeliness and waiver (*Village of Carpentersville v. Mayfair Construction Co.* (1981), 100 Ill. App. 3d 128, 133, 426 N.E.2d 558, 562). Defendants maintain that other courts have held that the arbitrator should likewise determine whether a prior award should be given *res judicata* effect, citing as support *Janiew v. Detroit Automobile Inter-Insurance Exchange* (1972), 41 Mich. App. 579, 200 N.W.2d 464. That is not, however, the holding of *Janiew*. In that case, the single reviewable issue was whether, in an arbitration proceeding arising out of an uninsured motorist provision of an insurance policy of a passenger—injured in an accident between two uninsured motorists—the arbitrator exceeded his power under the State statute by refusing to be bound by a judgment entered in a common pleas court involving only the two uninsured drivers. The reviewing court found that the claim before the arbitrator was not the claim involved in the court action, nor were the parties the same, and therefore neither the plaintiff nor the defendants in the cause were bound by the common pleas judgment.

Defendants maintain that in the unlikely event of error by the arbitrator, the other party could obtain relief by applying to vacate the award pursuant to section 11 of the Act (Ill. Rev. Stat. 1983, ch. 10, par. 111). Defendants have not, however, sought to overturn the earlier award; and it is not necessary that that award have been confirmed in order to be accorded finality (see, *e.g.*, *Hilowitz v. Hilowitz* (1980), 105 Misc. 2d 384, 387, 432 N.Y.S.2d 344, 348).

■ Illinois law on *res judicata* and collateral estoppel was discussed by this court in *Redfern v. Sullivan* (1983), 111 Ill. App. 3d 372, 375-77, 444 N.E.2d 205, 208-09, wherein it was noted that the doctrine of *res judicata* is divided into two branches: estoppel by judgment, sometimes referred to as *res judicata,* and estoppel by verdict, also known as collateral estoppel. Under the doctrine of estoppel by judgment, a final judgment may be asserted in bar of a second action where the parties and the cause of action are identical. (*City of Hickory Hills v. Village of Bridgeview* (1977), 67 Ill. 2d 399, 367 N.E.2d 1305.) Causes of action are identical where the evidence necessary to sustain a second verdict would sustain the first, *i.e.,* where the causes of action are based upon a common core of operative facts. As this court stated in *Decatur Housing Authority v. Christy-Foltz, Inc.* (1983), 117 Ill. App. 3d 1077, 1082, 454 N.E.2d 379, 383, "[u]nder the doctrine of estoppel by verdict, a former judgment bars only those questions *actually decided* in the prior suit—the scope of the bar is narrower than under the doctrine of estoppel by judgment. (*City of Peoria v. Peoria City Lines, Inc.* (1962), 24 Ill. 2d 457, 182 N.E.2d 164.)" As between the doctrines of estoppel by judgment and estoppel by verdict, there is a fundamental difference in the breadth of a former judgment's conclusiveness. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.) If the arbitration award is binding on the parties, any inquiry into the matters originally controverted is forever closed. (*Rogers v. Holden* (1851), 13 Ill. 293, 295.) A valid award has all the force of an adjudication, and precludes the parties from again litigating the same matters. *Merritt v. Merritt* (1850), 11 Ill. 565, 569.

■ With respect to the last arguments of the defendants, we conclude that the subject matter of the grievance underlying the prior arbitration and the instant grievance was the same, *i.e.,* whether Pullen is to be given one year of credit, or step advancement, for that portion of school year 1981-82 which she taught. Therefore the doctrine of *res judicata,* or estoppel by judgment, was applicable despite the fact that the grievances were phrased alternatively in terms of placement on the salary schedule for the school years 1982-83, and 1983-84; this does not change the actual issue (*City of Peoria v. Peoria City Lines, Inc.* (1962), 24 Ill. 2d 457, 462-63, 182 N.E.2d 164, 167), which was found as not timely pursued initially under the specific terms of the bargaining agreement. That the merits of the underlying grievance were not heard or passed upon in the prior proceeding does not deprive the award of its finality on the issue. Our reasoning herein, as that of the trial court, is limited to the grievance of defend-

ant Pullen, and the pursuit thereof by MEA; and not to any similar grievance which may be made out on behalf of other teachers, despite language in the instant grievance pertaining to "all other teachers affected in a like manner." As the same issue and parties were involved in the pending arbitration as in the prior award, the trial court properly gave *res judicata* effect to the prior award.

Affirmed.

MORTHLAND, J., concurs.

JUSTICE GREEN, specially concurring:

I concur.

The opinion of the majority well states the law. The precedents of *City of Peoria* and the decisions upon which it was based require a determination that defendant Pullen's claim in regard to her salary for the 1982-83 school year and her claim in regard to the 1983-84 year are the same cause of action. However, I am troubled by the *res judicata* effect the operation of that theory imposes upon her.

Had Pullen made no attempt to seek a credit on the salary schedule in regard to her pay for the 1982-83 year, she would not be barred from making a similar claim in regard to her salary for 1983-84. Because she did make an earlier attempt to raise that claim in regard to 1982-83 but was deemed to have initiated the grievance too late for that year, the *res judicata* doctrine prevents her from proceeding on a grievance which is timely for the year 1983-84. The result appears to be unfair. Significantly, the point which she seeks to raise and has never been able to present is one which could affect her compensation throughout her teaching career.

The apparent unfairness arises from applying the rule of *City of Peoria,* which treats claims for compensation for different periods all arising under the terms of the same grant, franchise, contract or other document as one cause of action and then superimposing upon that rule the rule that the denial of a cause of action because it is brought untimely is a determination to which *res judicata* effect is to be given. Parties in the position of the plaintiff here would still be adequately protected if claims for successive periods could be treated as separate causes of action. One determination of the question as to whether a person in the position of Pullen was or was not entitled to credit on the salary schedule would still create a collateral estoppel and prevent relitigation.