AMALGAMATED TRANSIT UNION, Local No. 313, Plaintiff-Appellee, v. ROCK ISLAND COUNTY METROPOLITAN MASS TRANSIT DISTRICT, Defendant-Appellant.

Third District No. 3—89—0048

Opinion filed January 18, 1990.—Rehearing denied March 27, 1990.

Douglas G. Olson and Jerry J. Pepping, both of McGehee, Boling, Whitmire & Olson, Ltd., of Silvis, for appellant.

Stephen P. Wing, of Dwyer & Wing, P.C., and Patricia Zamora, both of Davenport, Iowa, for appellee.

JUSTICE STOUDER delivered the opinion of the court:
The appellant, Rock Island County Metropolitan Mass Transit District (Transit District), appeals from the granting of a motion to com-

pel arbitration brought by the appellee, Local No. 313 of the Amalgamated Transit Union (Union). The Union cross-appeals from the circuit court's order entered on the Transit District's motion to reconsider.

The Transit District provides bus service in Rock Island County. The Union is the duly authorized representative and bargaining agent for the union employees of the Transit District. The Union and the Transit District entered into a collective bargaining agreement effective July 1, 1984. The agreement provided for the establishment of a small bus division composed of buses which contain 25 seats or less and are 30 feet or less in length. The small buses were to be used on the Transit District's regular routes and for other specialized transportation services. Under the agreement, small bus operators are paid at a rate equal to 60% of the top rate paid to large bus operators. The agreement also provided for the selection of operator routes under a bidding process based on seniority.

In addition, the record shows that in 1975 the Transit District and the Union entered into an agreement entitled "Supplemental Agreement Pursuant to Section 13(c) of the Urban Mass Transportation Act of 1964, As Amended" (the section 13(c) agreement). The section 13(c) agreement provided that in the event the Transit District received a Federal capital grant to assist in the purchase of seven new buses and other transit equipment (the Project), it was agreed, among other things, employees covered by the agreement would not be "placed in a worse position with respect to compensation, hours, working conditions *** as a result of the Project." The record indicates that in 1984 the original section 13(c) agreement was incorporated by reference into agreements made at the time the Transit District applied for Federal grants to assist in the purchase of the small buses and other equipment. We note that the record does not contain a copy of these incorporating agreements and that in admissions filed by the Union, the Union denied the execution of such agreements. However, in its brief to this court, the Union states that a section 13(c) agreement was negotiated in 1984, along with the collective bargaining agreement.

On January 6, 1987, a grievance was filed by Carolyn Thoensen, an employee of the Transit District. Thoensen alleged that her work assignment was changed from full time in the large bus division to full time in the small bus division. As a result her wage rate was reduced by 40%. She claimed it was not her choice to be placed in the small bus division. As a result of management's decision to reduce the number of available full-time, large bus positions, she was forced to

work either in the small bus division or part time in the large bus division with no benefits. Thoensen alleged that her condition of employment was worsened due to the federally funded grant used for the acquisition of the small buses. On March 13, 1987, the Union notified the Transit District that Pennie Mosley, Sam Brown and other employees wished to be included in the Thoensen grievance.

The record shows that prior to the Thoensen grievance, Mosley and Brown had filed a grievance alleging a violation of the collective bargaining agreement. In their grievance, they claimed that under the agreement only 13 employees of the Transit District could be transferred to the small bus division. They claimed that as a result of decisions made by management, they were forced out of positions as full-time, large bus operators and into the small bus division. The grievants concluded that the actions taken by the company had adversely affected the terms and conditions of their employment in contravention of the spirit and intent of the collective bargaining agreement.

The Mosley-Brown grievance was submitted to arbitration on April 2, 1986. The arbitrator found that there was no merit to the contention that the Transit District was required to maintain a certain number of full-time, large bus positions. He also found that the grievants voluntarily transferred to the small bus division. The arbitrator stated: "In the instant case the District neither assigned, transferred or [sic] forced the grievants to accept any particular position. The position obtained was by reason of a bidding process and the exercise of seniority." The Union did not seek review of the arbitrator's decision.

In the instant case, the Union made repeated demands to the Transit District requesting that the Thoensen grievance be submitted to arbitration. The Transit District refused to arbitrate. On May 28, 1987, the Union filed in the circuit court of Rock Island County a motion to compel arbitration. It subsequently filed a second amended complaint to compel arbitration. On April 4, 1988, the Transit District filed a motion for permanent stay of arbitration pursuant to section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 102), contending that the Union's claim was barred under the principles of *res judicata* and collateral estoppel.

A hearing was held on April 8, 1988, and at the conclusion of that hearing, the court requested that the parties submit briefs on the issues raised accompanied by proposed written orders. On July 19, 1988, the court entered an order granting the Union's "motion" to compel arbitration. The court found, *inter alia*, that in the instant case the application of the principles of *res judicata* and collateral

estoppel was precluded by the lack of any language in the section 13(c) agreement intended to "bar or extinguish any future grievance." The court held that the Mosley-Brown grievance concerned the issue of voluntary versus involuntary transfer under section 41 of the collective bargaining agreement. On the other hand, the issue in the Thoensen grievance was the worsening of wages or conditions of employment as the direct or indirect result of a federally funded project. Noting the fact that Brown and Mosley joined in the Thoensen grievance, the court held that the parties in the Mosley-Brown grievance were not the same as the parties in the Thoensen grievance.

On the Transit District's subsequent motion to reconsider, the court held that its July 19, 1988, order should not be interpreted to preclude the Transit District from raising any defense before the arbitrator. It also vacated that portion of the order which held that the parties to the two grievances were not the same. The court held that under the collective bargaining agreement a grievance is defined as any controversy between the Transit District and the Union. The court affirmed as modified its order of July 19, 1988. The Transit District appealed from the circuit court's modified order, and the Union cross-appealed the issue of identity of party.

Initially, we address the Union's cross-appeal. On appeal, the Union contends that the circuit court erred in reversing its original finding that the parties to the two grievance procedures were not the same for purposes of *res judicata* and collateral estoppel. It argues that this action is brought pursuant to the section 13(c) agreement and that the agreement is ambiguous in regards to whether individual employees can bring actions for violation of the agreement. However, in its brief to this court, the Union concedes that for purposes of arbitration the parties to the dispute are the Union and the Transit District.

The 1975 section 13(c) agreement provides that when an adversely affected employee brings a claim, the Transit District must either honor the claim or notify the Union of its reasons for rejecting the claim. In the event the Transit District rejects the claim, the Union may invoke specific procedures for the investigation of the claim. The parties then meet and attempt to "agree upon the proper disposition of the claim." Paragraph 9 of the 1975 section 13(c) agreement states in pertinent part: "In the event of any labor dispute involving the Public Body and the employees covered by this agreement which cannot be settled within thirty (30) days after such dispute first arises, such dispute may be submitted at the request of either the Union or the Public Body to a board of arbitration selected in accordance with

the existing collective bargaining agreement ***."

█ The collective bargaining agreement describes a grievance as any controversy between the Union and the employer involving interpretation of the agreement. The parties to both agreements are the Union and the Transit District. The agreements denominate the parties as the Union and the Transit District. Under both agreements it is the Union which requests arbitration of disputes, not the individual union members. The Union brought the Mosley-Brown dispute to arbitration. In the instant case, both the motion to compel and the complaint were brought by the Union. The parties to both actions were the Union and the Transit District. Therefore the circuit court correctly held that the parties in both actions were the same.

The remaining issue is whether the current action is barred by the doctrines of *res judicata* or collateral estoppel. The trial court found and the Union argues on appeal that because the section 13(c) agreement lacks provision for barring and extinguishing "any future grievance," the doctrines of *res judicata* and collateral estoppel do not apply to this action. In other words, in order for the doctrines of *res judicata* and collateral estoppel to apply, the parties must provide for their application within the text of the agreement. The Union cites *Monmouth Public Schools v. Pullen* (1985), 141 Ill. App. 3d 60, 489 N.E.2d 1100, as support for its rather novel argument.

█ The issue in *Monmouth* concerned the scope of a court's authority when a motion to stay arbitration is brought under section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 102). It was argued in *Monmouth* that, under the statute, the court was limited to determining whether an agreement to arbitrate existed. The court held that in such proceedings it also had the authority to decide the *res judicata* and collateral estoppel effect to be given a prior arbitration award. The case does not stand for the proposition that these doctrines can be altered by agreement of the parties. *Res judicata* and collateral estoppel are judicially created doctrines designed to protect litigants from the burden of retrying an identical cause of action or issue with the same party or privy, and to enhance judicial economy by prohibiting repetitive litigation. (*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 447 N.E.2d 834.) Parties do not have the power to alter the applicability of these judicially created doctrines of law. These doctrines are not rendered inapplicable by the parties' failure to provide for them in their contract.

█ █ On review of the record we find the Union's claim to be barred by *res judicata*. Under the doctrine of *res judicata*, a final judgment on the merits is conclusive as to the rights of the parties

and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. (*Reynolds Metals Co. v. V.J. Mattson Co.* (1984), 125 Ill. App. 3d 554, 466 N.E.2d 357.) *Res judicata* is conclusive not only as to every matter which was offered to sustain or defeat the claim or demand, but as to any other matter which might have been offered for that purpose. (*Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 461 N.E.2d 959.) The test is whether the causes of action are based upon a common core of operative facts or whether the evidence necessary to sustain the second verdict would have sustained the first. (*Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 444 N.E.2d 205.) A cause of action consists of a right belonging to the plaintiff which the defendant violates by some wrongful act or omission. *Edwards v. City of Quincy* (1984), 124 Ill. App. 3d 1004, 464 N.E.2d 1125.

▉ Arbitration is in the nature of a judicial inquiry with its object to achieve a final and binding disposition of differences between parties, both present and prospective, with the force of an adjudication precluding the parties from relitigating the same subject. (*Kemling v. Country Mutual Insurance Co.* (1982), 107 Ill. App. 3d 516, 437 N.E.2d 1253.) If the arbitration award is binding on the parties, any inquiry into the matters originally controverted is forever closed. *Monmouth Public Schools v. Pullen* (1985), 141 Ill. App. 3d 60, 489 N.E.2d 1100.

A review of the record shows that the cause of action in both grievances involved the same core of operative facts. Thoensen alleged that by reason of a management decision to reduce the number of large bus positions she was forced into the small bus division. This resulted in a reduction in her wage rate. Mosley and Brown claimed in their grievance that as the result of a decision by management, they were forced into the small bus division. They claimed that the actions of the Transit District adversely affected the terms and conditions of their employment and that they were entitled to be paid at the large bus rate. The arbitrator in the Mosley-Brown grievance found that the Transit District did not force the grievants into the small bus division, but rather they obtained the positions by reason of the bidding process and the exercise of seniority as provided in the collective bargaining agreement. Under the agreement, the Transit District was not required to maintain a minimum number of large bus positions. The Union did not seek review of the arbitrator's decision and concedes that it is bound by that decision. In support of its claim in the Mosley-Brown action, the Union could have alleged its theory of a section 13(c) violation. In failing to do so, the Union is barred

from attempting to relitigate this dispute on a theory it could have raised in the earlier proceeding. The arbitrator determined that the change in the employees' positions was not the result of a violation of any agreement, but was the result of the terms of the collective bargaining agreement which the union membership approved. The instant cause of action is barred by the doctrine of *res judicata*.

Therefore, the judgment of the circuit court of Rock Island County as it relates to the finding of identity of party is affirmed; the remaining judgment is reversed and the cause remanded with directions to grant the Transit District's motion for a permanent stay of arbitration.

Affirmed in part; reversed in part and remanded with directions.

SCOTT and WOMBACHER, JJ., concur.