STANLEY CROOM *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF DE KALB, Defendant-Appellee.

Second District   No. 78-171

Opinion filed May 8, 1979.—Rehearing denied June 11, 1979.

Gilbert Feldman, of Cornfield & Feldman, of Chicago, for appellants.

Bernard Z. Paul, of De Kalb, for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of De Kalb County entering judgment on the behalf of the defendant, City of De Kalb, and against the plaintiffs who are members of the De Kalb Firefighters Association, Local 1236, International Association of Firefighters, AFL-CIO. The plaintiffs brought an action individually and

on behalf of the Association for a mandatory injunction to cause the city to arbitrate the issue of additional pay for firefighters assigned duties of acting officers. The trial court examined the collective bargaining agreement between the parties and found that that was not an issue upon which the parties had agreed to arbitrate. We agree.

Section 102(a) of the Uniform Arbitration Act provides:

> "On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." (Ill. Rev. Stat. 1977, ch. 10, par. 102(a).)

Article XXII of the party's collective bargaining agreement provides for a grievance and arbitration procedure. Any employee or group of employees of the fire department who feels aggrieved as a result of any condition arising out of the employer-employee relationship is to prepare a statement of the grievance for presentation to the fire chief; if the matter remains unsettled after a specified period of time the union may refer the matter to the city manager and, if the grievance is not satisfactorily settled the article provides for arbitration in the following language:

> "THIRD. In the event that the Union Committee and the aggrieved are dissatisfied with the City Manager's decision and said grievance involves the interpretation or application of the express provisions of this Agreement, the Union may refer the matter to Arbitration by giving written notice of its desire to do so to the City Manager within ten (10) days (excluding Saturdays, Sundays, and Holidays), after the decision rendered pursuant to Step Two of the Grievance Procedure. If the Union has given proper notice to the City Manager of its desire to refer the matter to Arbitration the matter shall be settled as follows * * *."

Thereafter follows the procedure by which arbitrators are to be chosen and other details relating to the arbitration process.

Another provision of the collective bargaining agreement provides:

> "Article XXXIV. ENTIRE AGREEMENT
>
> The parties acknowledge that during the negotiations which resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, the Employer and the

Union, for the duration of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement or with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed this Agreement."

The collective bargaining agreement also provides:

"Article VIII. WAGES

Members shall be compensated in accordance with the rates set forth in Appendix 'A' which is attached hereto and made a part hereof."

Appendix "A" referred to in article VIII is a pay scale in the following form:

"APPENDIX 'A'

Members of the fire department shall be compensated in accordance with the following Wage Schedule:

Effective, July 1, 1976

| Class | Grade | | | | |
|---|---|---|---|---|---|
| | A | B | C | D | E |
| Firefighter | $3.64 | $4.49 | $4.69 | $4.94 | $5.18* |
| | $5.09 | $6.28 | $6.566 | $6.913 | $7.252** |
| O.T. | $7.644 | $9.429 | 9.849 | $10.374 | $10.878 |
| 120 hours | 436.80 | 538.80 | 562.80 | 592.80 | 621.60 |
| 96 hours | 349.44 | 431.04 | 450.24 | 474.24 | 497.28 |
| (per year) | $10,599.68 | $13,074.88 | $13,657.28 | $14,385.28 | $15,084.16 |

\* 56 hour work week
\*\* 40 hour work week"

Appendix "A" then continues in the above form to set out the pay for officers and the increases for the next fiscal year. It then concludes:

"LENGTH OF SERVICE INCREASES

Members covered by this Agreement shall advance to the next step in the salary schedule at the beginning of the pay period following the anniversary date of their appointment or promotion each year until they have advanced to the last step of the salary schedule.

The automatic annual advancement to the next step based on length of service shall be replaced by an incentive program if an incentive program is agreed to by both the Employer and the Union."

The sole issue on appeal is whether the trial court erred in finding that the parties had not agreed to arbitrate a dispute concerning additional pay for firefighters performing the duties of acting officers[1]. The trial court examined the collective bargaining agreement and specifically article VIII and appendix "A", article XXII and article XXIV, quoted above, and found that nowhere in the agreement is there a provision for any different pay for firemen performing acting duties as lieutenants or captains or "acting pay" of any kind. It thereupon entered judgment for the defendant on the plaintiff's complaint for mandatory injunction.

The plaintiffs argue that in so doing the trial court exceeded the provisions of section 102 of the Uniform Arbitration Act (Ill. Rev. Stat. 1977, ch. 10, sec. 102) and violated the admonition of the United States Supreme Court in *United Steel Workers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343, and *United Steel Workers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347, that courts are not to interpret or construe an agreement or touch upon the matters of the controversy under the guise of ruling on the arbitrability. In *American Manufacturing* the Supreme Court described the role of the court to be very limited where the parties have agreed to submit all questions of contract interpretation to an arbitrator in that the courts are confined to ascertaining whether the parties seeking arbitration are making a claim which on its face is governed by the contract.

In *Warrior and Gulf* the Supreme Court, in essence, established a presumption in favor of the arbitrability of labor-management grievances:

> "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpetation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 1417-18, 80 S. Ct. 1347, 1353.)

Further, the court explained that the labor arbitrators' "source of law is not confined to express provisions of a contract"; arbitrators can also look to the practices and custom of the industry in question, to what the court referred to as "the industrial common law." Arbitration, then, is a "means of solving the unforeseeable" and "a vehicle by which meaning and content are given to the collective bargaining agreement." 363 U.S. 574, 581-82, 4 L. Ed. 2d 1409, 1417, 80 S. Ct. 1347, 1352.

---

[1] At the trial court, the city also raised the issue that the dispute was not arbitrable under an illegal delegation theory. However, the trial court did not base its ruling on this issue and this defense was withdrawn from this appeal by the city.

Finally, in *Warrior and Gulf* the court drew a distinction between arbitration in a commercial setting and arbitration in the setting of a collective bargaining agreement:

> "Thus the run of arbitration cases * * * becomes irrelevant to our problem. There the choice is between an adjudication of cases or controversies in courts with established procedures and even special statutory safeguards on the one hand and the settlement of them in the more informal arbitration tribunal on the other. In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself." (363 U.S. 574, 578, 4 L. Ed. 2d 1409, 1415, 80 S. Ct. 1347, 1351.)

This distinction is especially important here as the entire body of case law that has developed under section 102(a) of the Arbitration Act has been confined to the commercial, as opposed to labor-management, setting.

The Illinois legislature and courts have recognized the unique function of arbitration in the context of labor-management relations. Thus the Illinois version of the Uniform Arbitration Act in specifying the grounds for vacating, modifying, or correcting arbitration awards expressly exempts awards entered pursuant to collective bargaining agreements. (Ill. Rev. Stat. 1977, ch. 10, par. 112(e).) While section 102(a) of the Act does include agreements to arbitrate labor-management disputes (see Ill. Ann. Stat., ch. 10, Introductory Note, at 401-02 (Smith-Hurd 1975)), the fact that this controversy arose in the course of such a dispute cannot be ignored.

It is clear that the Illinois Supreme Court in seeking guidance in cases concerning arbitration of labor-management questions has looked to the mandates of the United States Supreme Court as outlined above. Thus, in the recent case of *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 386 N.E.2d 47, our supreme court quoted extensively from *American Manufacturing, Warrior and Gulf*, and *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358, and noted that the Illinois legislature had "endorsed the policy of treating arbitration in collective bargaining cases as a unique agency." 74 Ill. 2d 412, 419.

■■ In sum, in deciding the present dispute, this court will follow the guidelines of both the United States and Illinois supreme courts and recognize the peculiar nature of arbitration in the context of collective

bargaining. In particular, we reject the suggestion of the defendant that we base our decision on the standard that for an issue to be arbitrable it must be "stated in the contract in crystal clear language unextended and unenlarged either by construction or by implication." (*Blades, Inc. v. Jarman Memorial Fund, Inc.* (1969), 109 Ill. App. 2d 224, 226, 248 N.E.2d 289, 290.) This standard, as the court in *Blades* expressly acknowledged at 109 Ill. App. 2d 224, 227, was developed in the context of a commercial undertaking and is not applicable in a dispute over the meaning of a collective bargaining agreement.

■■ ■ Having determined the proper perspective to employ, we must now return to the particular provisions of the collective bargaining agreement between the parties. For while there is a presumption of arbitrability, arbitration remains "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (*Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 1417, 80 S. Ct. 1347, 1333.) The initial decision as to the arbitrability of a dispute is for the courts. *Atkinson v. Sinclair Refining Co.* (1962), 370 U.S. 238, 241, 8 L. Ed. 2d 462, 465-66, 82 S. Ct. 1318.

The parties' agreement defines a grievance in very broad terms. Any employee or group of employees who feel "aggrieved as a result of any condition arising out of the *employer-employee* relationship" (emphasis added) can present a written statement to the fire chief. As a second step, any unresolved grievance may be referred by the union to the city manager. The third step, arbitration, is more limited, however. Arbitration is provided only under the condition "* * * the union committee and the aggrieved are dissatisfied with the City Manager's decision and said grievance involves *the interpretation or application of the express provisions of this agreement* * * *." (Emphasis added.) Here, then, is a direct statement limiting arbitration. Clearly not all grievances are subject to arbitration. See, for example, *Torrington Co. v. Metal Products Workers Union Local 1645* (2d Cir. 1965), 347 F.2d 93, 95, *cert. denied* (1965), 382 U.S. 940, 15 L. Ed. 2d 351, 86 S. Ct. 394.

Plaintiff argued that wages in general are an express provision of the agreement and that a dispute over wages is therefore arbitrable. The trial court upon examining the entire agreement failed to find any "express provisions" in the agreement relating to additional pay for the performance by firefighters of the duties of acting officers. The interpretation of the trial court is strengthened by article XXIV of the agreement where the parties acknowledge that they "had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this

agreement." Thus the wage scales summarized above, which are silent on the issue of additional pay for the performance of the duties of acting officers, show the absence of an agreement for additional pay.

In *Gulf and Warrior* the United States Supreme Court held that, in general, the source of law for a labor-management dispute is "not confined to the express provisions of the contract." Here, however, the parties by negotiation have limited arbitration to grievances involving an "express provision" of the agreement. The collective bargaining agreement clearly has no express provision for additional pay for firefighters performing the duties of acting officers. A dispute over additional pay may be a proper subject for a grievance, but not for arbitration. This, then is a case where "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Gulf & Warrior*, 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 1417, 80 S. Ct. 1347, 1353.

We hold that the issue of additional pay for firefighters performing the duties of acting officers was not within an express provision of the collective bargaining agreement between the parties and is therefore not a subject for arbitration, and we affirm the judgment of the Circuit Court of De Kalb County.

Affirmed.

RECHENMACHER and NASH, JJ., concur.