BOARD OF EDUCATION OF TOWNSHIP HIGH SCHOOL DISTRICT NO. 205, COOK COUNTY, Plaintiff and Counterdefendant-Appellant, *v.* FACULTY ASSOCIATION OF DISTRICT 205, Defendant-Appellee—(Marion E. Fox, Defendant and Counterplaintiff-Appellee).

First District (1st Division)   No. 82—2942

Opinion filed December 27, 1983.

John H. Hager and David K. Staub, both of Cowen, Crowley & Hager, of Chicago, for appellant.

Wayne Schwartzman, Peter M. Katsaros and Dale D. Pierson, all of Hirsh & Schwartzman, P.C., of Chicago, for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of a declaratory judgment action brought by the Board of Education of Township High School District No. 205 against the defendant Faculty Association of District 205. The board sought a declaration of inarbitrability and a stay of arbitration proceedings with respect to a labor grievance filed pursuant to a collective bargaining agreement. The faculty association had filed the grievance on behalf of Marion Fox, a school nurse who had been terminated by the board. The defendant faculty association answered plaintiff's complaint, denying that the dispute was inarbitrable under the terms of the contract and prayed that plaintiff be ordered to submit the dispute to binding arbitration. Marion Fox was subsequently added as a party defendant and given leave to file a counterclaim. Therein, she advanced several theories of recovery, all of them culminating in a request that the school board be required to reinstate her and make her whole for all economic and emotional injuries resulting from her termination. Plaintiff appeals from an order of the trial court granting defendants' motion for summary judgment with respect to the arbitrability issue and requiring the parties to arbitrate

the dispute.

The record reveals that at all relevant times both the school board and the faculty association were parties to a collective bargaining agreement referred to as a "Professional Negotiations Contract" (contract). The preamble of the contract recognizes the faculty association as the exclusive bargaining agent for

> "all professional certificated employees of the district eligible for active membership in the Association *except* psychologists, administrative assistants in charge of deans, administrative assistants in charge of counselors, administrative assistants in charge of student activities, assistant-principals, and central office administrative personnel." (Emphasis added.)

The coverage under the contract is further elaborated in article IA of the substantive provisions wherein the faculty association is recognized as

> "the exclusive and sole negotiating agent for all regularly employed certified personnel who are paid pursuant to the adopted salary schedule and as defined in the Professional Negotiations Contract."

Article IB provides the following definition:

> "The term 'teacher' or 'certificated professional employee' when used hereinafter in this agreement, shall refer to all employees represented by the Association in the negotiating units as determined in paragraph 'A' above."

Marion Fox was a member of the faculty association and was employed by the school board as a registered professional nurse. On April 8, 1981, the school board honorably dismissed Ms. Fox due to declining enrollment. Pursuant to the "Professional Grievance Procedure" of the contract, the faculty association filed a grievance on behalf of Ms. Fox alleging among other things that the school board's action violated the "reduction in personnel" section of the contract and that her termination was a reprisal for a prior strike action. The applicable contract grievance procedures are typical of labor contracts in general and provide for escalating steps in the processing of the labor grievance culminating in binding arbitration. The scope of grievable issues subject to arbitration is broadly defined by the contract as

> "[a] claim based upon an event or condition which affects the conditions or circumstances under which a teacher works, *allegedly caused by misinterpretation or inequitable application of the terms of the Professional Negotiations Contract* including the Substantive Agreement." (Emphasis added.)

The school board apparently refused to process Ms. Fox' grievance,

whereupon the faculty association filed a formal demand for arbitration. The board responded by initiating the declaratory judgment action which forms the subject matter of the present appeal. Our review of the proceedings below is limited to the issue of whether the dispute over Marion Fox' termination is arbitrable under the contract grievance provisions. We affirm the judgment of the trial court.

Initially, we note that the Illinois legislature and courts have recognized the unique function of arbitration in the context of labor-management relations. (See *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 419, 386 N.E.2d 47; *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 375, 389 N.E.2d 647.) Accordingly, our case law draws a distinction between the guidelines applicable in determining the arbitrability of a dispute in a labor context as opposed to a commercial context. (*Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 374-75, 389 N.E.2d 647.) This development of separate standards followed the lead established by the United States Supreme Court in a series of seminal cases commonly referred to as the Steelworkers Trilogy. (*United Steelworkers of America v. American Manufacturing Co.* (1960), 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343; *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347; *United Steelworkers of America v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358.) In *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 578, 4 L. Ed. 2d 1409, 1415, 80 S. Ct. 1347, 1351, the court commented on the distinction between arbitration in the commercial setting and labor arbitration in the setting of a collective bargaining agreement, noting:

> "In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite different functions from arbitration under an ordinary commercial agreement, the hostility envinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself."

The court went on to establish a presumption in favor of the arbitrability of labor-management grievances:

> "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor*

*of coverage.*" (Emphasis added.) 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 1417-18, 80 S. Ct. 1347, 1353.

In *Board of Trustees v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 419, 386 N.E.2d 47, our supreme court quoted extensively from the Steelworkers Trilogy, noting that labor arbitration was *sui generis* and a necessary compliment to labor negotiation. This court in *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 389 N.E.2d 647, specifically adopted the guidelines established by the Steelworkers Trilogy and the Illinois Supreme Court with respect to the arbitrability of disputes arising out of a collective bargaining agreement. (71 Ill. App. 3d 370, 374-75.) In doing so, the court rejected the standard developed in commercial cases that for an issue to be arbitrable it must be " 'stated in the contract in crystal clear language unextended and unenlarged either by construction or by implication.' " 71 Ill. App. 3d 370, 375.

■ It is against this backdrop that we note a well-settled principle of arbitration law—the initial decision as to arbitrability is for the courts. (*Lehman v. Eugene Matanky & Associates, Inc.* (1982), 107 Ill. App. 3d 985, 988, 438 N.E.2d 614; *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 375, 389 N.E.2d 647; *Paschen Contractors, Inc. v. John J. Calnan Co.* (1973), 13 Ill. App. 3d 485, 489, 300 N.E.2d 795.) While there is a presumption of arbitrability for disputes arising out of a collective bargaining agreement, arbitration remains a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. (*United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 1417, 80 S. Ct. 1347, 1353; *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 375, 389 N.E.2d 647.) A proper resolution of this case will therefore require a determination as to what types of disputes the parties to the contract have agreed to arbitrate.

Initially, the school board argues that Ms. Fox is not a member of the negotiating unit as defined in the contract preamble and articles IA and IB and, therefore, the contract grievance provisions are not applicable to her. The board contends that it has only agreed to arbitrate disputes with members of the given negotiating unit and it cannot be compelled to arbitrate the grievances of nonmembers. We reject this argument, finding the issue raised to be the subject of a binding judicial admission to the contrary.

■ Paragraph 10 of Ms. Fox' counterclaim contains the following allegations which were admitted by the school board in its answer without qualification:

"The Faculty Association of District 205 had entered into a

'Professional Negotiations Contract' (hereafter, the 'Contract') with the Board for the 1980-81 school year. This Contract applied to Mrs. Fox at the time of her dismissal. *See* Article I, A & B of the Contract, attached hereto as Exhibit 2.''

It is axiomatic that an admission in an answer constitutes a formal judicial admission and is conclusive on the person making it. (*Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 1022, 327 N.E.2d 346; *Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 676, 306 N.E.2d 498.) Accordingly, the school board's specific admission is binding and it may not now disclaim the fact that the contract is applicable to Ms. Fox as a member of the negotiating unit defined in articles IA and IB of the contract.

Next, the school board argues that the grievance is inarbitrable because the resolution of the dispute will necessarily require a construction of the tenure provisions of the School Code. (Ill. Rev. Stat. 1981, ch. 122, pars. 24—11 through 24—16.) The board contends that it has only agreed to arbitrate matters "arising out of the misinterpretation or inequitable application of the terms" of the contract and not matters of State law. The defendants argue that the dispute falls within the ambit of the arbitration clause as a dispute arising out of the application of the "reduction in personnel" provisions of the contract.

The relevant contractual provision regulates the order in which school personnel are to be dismissed because of declining enrollment. As the school board correctly contends, this contractual provision requires that nontenured personnel be terminated before tenured personnel. Thus, a determination as to how the "reduction in personnel" provision applies to Ms. Fox may ultimately be resolved according to whether or not she is tenured under the School Code. However, we cannot agree that an arbitrator's decision will necessarily require a finding that Ms. Fox is entitled to statutory tenure. In this regard, we note that defendants have not limited themselves to arguments based on Ms. Fox' right to tenure under the School Code. Defendants also advance their cause under a theory of promissory estoppel based on the past practices and assurances of the school board. Clearly, statutory tenure with its full panoply of procedural safeguards may not be obtained by estoppel. However, equitable principles may estop the school board from denying that Ms. Fox is tenured solely for purposes of applying the "reduction in personnel" provision of the contract. Viewed in this light, Ms. Fox' grievance clearly arises from an alleged "misinterpretation or *inequitable* application of the terms" of the contract and falls squarely within the provisions of the arbitration clause.

■ Furthermore, we are not convinced that the parties intended to preclude a construction of the School Code tenure provisions. It is true that the contract requires the arbitrator to base his decision "solely upon his interpretation of the meaning or application of the express relevant language" of the contract. However, the term "contractual continued service" (tenure) expressly appears in the relevant contract provision and the arbitrator's "interpretation of the meaning" of this express term, which is explicitly permitted under the contract, must of necessity refer to the School Code provisions regulating tenure. Therefore, we must conclude that in the first instance, the parties have bargained for an arbitrator's interpretation of the School Code tenure provisions, not the court's. Accordingly, we hold that the initial determination of Ms. Fox' tenure status for purposes of applying the "reduction in personnel" contract provisions should be done by an arbitrator, subject to ultimate judicial review in the event of an appeal.

■ Finally, the school board argues that Ms. Fox' conduct in filing a counterclaim amounts to a waiver of her contractual right to arbitration. We disagree, finding the resolution of this issue to be controlled by the result in *Kessler, Merci, & Lochner, Inc. v. Pioneer Bank & Trust Co.* (1981), 101 Ill. App. 3d 502, 428 N.E.2d 608. In *Kessler*, one of the parties initially set up an arbitration agreement as an affirmative defense and counterclaimed, in the alternative, through an action at law for damages. The court held that such action was not so inconsistent with the contractual right to arbitration so as to amount to a waiver of that right. (101 Ill. App. 3d 502, 509.) In the present case, defendants initially asserted their contractual right to arbitration when answering the school board's complaint and also asked the trial court to order the board to proceed with arbitration. Accordingly, under *Kessler* the subsequent filing of a counterclaim seeking damages does not constitute a waiver.

We believe our holdings here are consistent with the laudable public policy of encouraging labor arbitration as a substitute for disruptive concerted action. To the extent that resort to labor arbitration is hindered, strikes and other labor disturbances are promoted as a means of resolving labor-management disputes. Accordingly, we affirm the judgment of the circuit court of Cook County requiring the parties to arbitrate the dispute.

Affirmed.

McGLOON and GOLDBERG, JJ., concur.