CHAMPAIGN POLICE BENEVOLENT AND PROTECTIVE ASSOCIATION UNIT NO. 7 *et al.*, Plaintiffs-Appellees, v. THE CITY OF CHAMPAIGN, Defendant-Appellant.

Fourth District   No. 4—90—0556

Opinion filed March 21, 1991.

798

David E. Krchak, of Thomas, Mamer & Haughey, of Champaign, for appellant.

Edward H. Rawles, of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellees.

JUSTICE SPITZ delivered the opinion of the court:

The Champaign Police Benevolent and Protective Association Unit No. 7 (Association) brought this action to compel arbitration under section 2 of the Uniform Arbitration Act (Ill. Rev. Stat. 1987, ch. 10, par. 102). The City of Champaign (City) and the Association were parties to a contract providing for arbitration of certain disputes. The circuit court entered summary judgment in favor of the Association, requiring the City to arbitrate the issue in question.

The Association is comprised of City police officers. Plaintiff Brian Hockings (Hockings) is a City police officer. On August 6, 1986, defendant City and the Association entered into a contractual labor agreement (agreement).

On December 15, 1986, Hockings received notice from the City that he would receive a one-day suspension without pay. On December 16, 1986, Hockings filed a grievance alleging the discipline was too severe and communication between the chief of police and the city manager tainted the grievance procedure. He alleged the city manager, prior to the chief imposing discipline, conferred with the chief about the appropriate discipline in his case and had an "instrumental" role in determining the discipline the chief imposed. Hockings argues this intervention by the city manager deprived him of an impartial hearing before the city manager, thus violating the parties' collective-bargaining agreement.

The 1986 agreement between the Association and the City established a multitiered grievance procedure. An officer wishing to challenge a disciplinary action could first appeal to his immediate supervisor in step one. If dissatisfied with that result, step two provided an appeal to the division commander. Step three provided further appeal to the chief of police. If still dissatisfied, the chief's de-

cision could be appealed to the city manager in step four. Step four provided a discretionary appeal, and the city manager could review the grievance "[p]rovided that he or she elects to accept and hear such grievance." Finally, the city manager's decision—whether on the merits, or his or her decision declining to hear the appeal—could be appealed by the Association to an arbitrator if the issue involved is included among those listed in Article 37.2C of the agreement.

Article 37.2C of the agreement states:

"C. GRIEVANCES APPEALABLE ONLY TO AN ARBITRATOR

Grievances involving the following grievable issues may be appealed *by the ASSOCIATION* to an arbitrator if the officer or group of officers is not satisfied with the decision of the City Manager at the conclusion of the Grievance Procedure. In accordance with the Appeal Procedure set forth in Section 37.7B below, *the decision of the arbitrator shall be final and binding* upon all parties. Such grievances may *not* be appealed to the Board of Fire and Police Commissioners.

1. Provisions of this Agreement

An issue which involves the meaning, interpretation or application of the express provisions of this Agreement.

2. Rules and Regulations of the CITY

An issue which involves the application of any rule or regulation established and enforced by the CITY."

(Emphasis in original.)

Hockings pursued his grievance to step four, the city manager's level. Unsatisfied with the the city manager's decision, Hockings sought arbitration of both the appropriate level of discipline, and the alleged communication between the city manager and the chief of police. The City agreed to arbitrate the issue of the fact and extent of the discipline, but refused to arbitrate the appropriateness of the city manager's communication with the police chief.

Plaintiffs filed a complaint in the circuit court, requesting the City be ordered to arbitrate both the cause and severity of Hockings' suspension, and the propriety of the city manager's communication. The court entered summary judgment in favor of plaintiffs and ordered the City to arbitrate both issues. The City moved for reconsideration of its motion for summary judgment, arguing the court incorrectly believed the conversation between the chief and the city manager occurred *during* the grievance process and while an appeal was pending before the city manager. However, the al-

leged conversation occurred before the chief imposed discipline on Hockings. Because the communication occurred before the chief imposed discipline and, therefore, before the grievance procedure had begun, the City claimed this dispute could not involve the express provisions of the grievance procedure.

The court denied the City's motion and filed an amended memorandum opinion and order. The court acknowledged it had been of the view that the alleged communication occurred after an appeal had been taken by Hockings to the city manager in step four of the grievance procedure. There was no dispute that the alleged communication occurred before the chief imposed discipline on Hockings. The court held its reasoning in the original memorandum opinion and order was "correct notwithstanding its misconception as to the time that this conversation allegedly occurred." Although the grievance procedure had not yet begun, the disciplinary process leading to the grievance had. The court reasoned that communication, whether it occurred prior to imposing discipline, or after the grievance procedure had begun, still implicated the entire grievance procedure.

The Supreme Court, in a series of cases known as the "Steelworkers Trilogy," laid down general principles governing the arbitrability of disputes in the special context of collective-bargaining agreements. (*United Steelworkers v. American Manufacturing Co.* (1960), 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343; *United Steelworkers v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347; *United Steelworkers v. Enterprise Wheel & Car Corp.* (1960), 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358.) The Supreme Court reaffirmed these fundamental principles in *AT&T Technologies, Inc. v. Communications Workers* (1986), 475 U.S. 643, 89 L. Ed. 2d 648, 106 S. Ct. 1415.

■■ First, an agreement to arbitrate a dispute is a matter of contract. (*Warrior & Gulf*, 363 U.S. at 582, 4 L. Ed. 2d at 1417, 80 S. Ct. at 1353.) Thus, if the parties in their contract did not agree to submit this dispute to arbitration, a court cannot require them to arbitrate. (*Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board* (1988), 170 Ill. App. 3d 463, 471, 524 N.E.2d 758, 762.) The finding of a contractual duty must precede the requirement to arbitrate.

■ Second, the issue of whether the agreement provides for arbitration must be kept separate from an analysis of the merits of the underlying claim. A court should not rule on or be influenced by the merits of the dispute. This holds true even if one party's under-

lying claim is frivolous. (*American Manufacturing Co.*, 363 U.S. at 568, 4 L. Ed. 2d at 1407, 80 S. Ct. at 1346.) The question for this court is not whether the alleged communication violates the grievance procedure in the collective-bargaining agreement, but whether the parties agreed to submit this issue to arbitration.

■■ Finally, there is a presumption in favor of arbitration in collective-bargaining agreements containing an arbitration clause and, in cases of doubt, courts should decide in favor of arbitration. (*Warrior & Gulf*, 363 U.S. at 583, 4 L. Ed. 2d at 1418, 80 S. Ct. at 1353; *Board of Governors*, 170 Ill. App. 3d at 471, 524 N.E.2d at 762.) The arbitration clause in the instant case is not a broad one as plaintiffs claim, but is narrowed by its terms to apply only to disputes involving the "meaning, interpretation or application" of an express provision. Even so narrowed, the presumption in favor of arbitrability still applies.

The City argues the propriety of communication between the city manager and the chief is not subject to arbitration because (1) the agreement does not prohibit the communication at issue because the grievance procedure was never meant to provide impartial appellate hearings and, thus, the alleged *ex parte* communication could not have tainted the grievance procedure; (2) the agreement contains no express provision discussing intramanagement communications and, therefore, this dispute does not involve the meaning, interpretation, or application of an express provision; and (3) if the court orders arbitration on this issue, it will require arbitration on every issue that could possibly be addressed through the grievance procedure.

With respect to its argument that the agreement does not prohibit the communication at issue because the grievance procedure was never meant to provide impartial appellate hearings, the City maintains the grievance procedure is instead an extension of the collective-bargaining process; indeed, the City argues the grievance process is bargaining. Because of this, it is inappropriate to think of either side as "impartial" and incorrect to conclude the grievance procedure would prohibit intramanagement communications between the chief and the city manager.

■■ However, whether the agreement prohibits the city manager from discussing Hockings' discipline with the chief is an argument on the merits of the underlying dispute and is irrelevant to our consideration of its arbitrability. We "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular lan-

guage in the written instrument which will support the claim."
(*American Manufacturing Co.*, 363 U.S. at 568, 4 L. Ed. 2d at
1407, 80 S. Ct. at 1346.) The parties in the instant case agreed to
submit to arbitration *all* grievances involving the meaning, interpre-
tation, or application of express provisions of the agreement, not
only those which a court deems "meritorious." (*American Manufac-
turing Co.*, 363 U.S. at 468, 4 L. Ed. 2d at 1407, 80 S. Ct. at
1346.) The City's argument that the agreement does not prohibit
the communication at issue is properly made to the party resolving
the underlying dispute, and not to the court deciding the dispute's
arbitrability. Thus, the circuit court correctly noted this argument
on the merits should not be a factor in the court's determination of
arbitrability.

The City next argues the agreement must explicitly discuss in-
tramanagement communication for this dispute to be arbitrable. In
the absence of such explicit mention, this dispute cannot be said to
involve the meaning, interpretation, or application of an express
provision of the agreement.

■ There are two flaws in the City's argument. First, the City
frames the dispute too broadly, discussing it in terms of "intra-
management" communication. It ignores the fact that plaintiffs do
not seek to arbitrate the propriety of intramanagement communica-
tion in general. They do not argue, for example, the city manager
cannot consult with the chief on the general subject of officers' dis-
cipline. Nor do they argue the city manager cannot discuss a spe-
cific case with the chief after the city manager has either declined
to hear the appeal of a grievance thereon, or elected to hear it and
has rendered his decision on the grievance. The narrow dispute
plaintiffs wish to arbitrate is the propriety of the city manager's
communication in a specific case in the disciplinary process, which
may later become a grievance and appeal in the grievance process.

Second, the agreement need not explicitly discuss intramanage-
ment, predecisional communication in a specific case for a dispute
over its propriety to involve the meaning, interpretation, or applica-
tion of other express provisions of the agreement. Here, plaintiffs
argue this dispute involves the express sections of the agreement
providing for a grievance procedure, including the four-step appeal
process discussed above. We agree.

Providing for arbitration of disputes involving the "application"
and "interpretation" of the express terms of the agreement implies
that disputes may arise which, while not specifically enumerated, do
involve express terms of the agreement. Our analysis thus focuses

on the connection between the express provision establishing the grievance procedure, and the dispute, to determine whether the dispute involves the meaning, interpretation, or application of the grievance procedure.

■ Here, the dispute over the propriety of communication between the chief, who is deciding an officer's discipline, and the city manager, who may ultimately pass on the officer's appeal of a grievance filed as a result of the discipline, particularly involves the meaning, interpretation, and application of the entire grievance procedure. For example, if the city manager communicates his opinion that the chief should impose a one-day suspension on Hockings, and later hears or declines to hear the final appeal short of arbitration of a grievance on this suspension, the meaning and application of the grievance procedure become less impartial. We strongly emphasize we are expressing no opinion on the merits of the dispute— whether the communication violated the grievance procedure because it guarantees impartial hearings. We offer the above discussion only to illustrate how this dispute involves the meaning, interpretation, and application of the four-step appeal process within the grievance procedure. It may be, as the City argues, that the grievance procedure was never meant to provide an impartial review of disciplinary decisions short of arbitration. However, even by this argument the City admits that the meaning, interpretation, and application of the grievance procedure are at issue.

The City's reliance on *Croom v. City of De Kalb* (1979), 71 Ill. App. 3d 370, 389 N.E.2d 647, *appeal denied* (1979), 79 Ill. 2d 610, is misplaced. In *Croom*, a city firefighter sought to arbitrate the issue of additional pay for firefighters temporarily assigned to the duties of acting officers. The collective-bargaining agreement contained extensive provisions on wages, but was silent on the issue of additional pay in this situation. As here, the agreement provided a grievance procedure and limited arbitration to those issues " 'involv[ing] the interpretation or application of the express provisions of this Agreement.' " (*Croom*, 71 Ill. App. 3d at 371, 389 N.E.2d at 648.) Plaintiffs in *Croom* argued since wages were discussed in an express provision of the agreement, a dispute over them involved this express provision and, thus, was arbitrable. The *Croom* court disagreed, holding the dispute did not involve an express provision because there was no provision regarding additional pay for firefighters in this case.

*Croom* may be distinguished because there the manner in which the dispute was resolved did not implicate the meaning or interpre-

tation of the express wage provisions but would have added to them. In contrast, this dispute directly bears on the meaning and application of the express provision delineating the grievance procedure itself, *i.e.*, the level of impartiality required short of arbitration. In addition, the court in *Croom* seemed to base its decision in part on its view of the merits of the underlying claim.

The City also argues that to require arbitration here would require arbitration of every management decision involving discussion between the chief and the city manager. Since most management decisions can be grieved, predecisional, intramanagement discussions would always involve the application of the express provisions of the grievance procedure. Thus, *any* management decision where the city manager communicated his thoughts to a lower level of management would implicate the express provisions of the grievance procedure, since the city manager would also hear the appeal of any grievance on that issue. The City argues this is an implausible interpretation of the agreement.

■ The City states its objection too broadly. Our holding is restricted to the facts of this case in that it would not be *any* intramanagement discussion which would be arbitrable, but only those discussions between an administrator and the city manager on a specific case which may later be appealed via the four-step appeal process in the grievance procedure. Furthermore, the city manager would be free to comment on the specific case once he or she had rendered a decision in the grievant's appeal.

So narrowed and limited, the dispute at issue is arbitrable as it involves the meaning, interpretation, and application of the express terms of the agreement providing for the grievance procedure.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.