JUPITER MECHANICAL INDUSTRIES, INC., Plaintiff-Appellant, v. SPRINKLER FITTERS AND APPRENTICES LOCAL UNION No. 281 *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—95—2337

Opinion filed May 28, 1996.

218

Widman, Goldberg & Zulkie, Ltd., of Chicago (Joel L. Widman, of counsel), for appellant.

Robert S. Bates, Jr., of Jacobs, Burns, Sugarman, Orlove & Stanton, of Chicago, for appellees.

JUSTICE WOLFSON delivered the opinion of the court:

The issue in this case is whether the collective bargaining agreement between a union and an employer requires that the two sides arbitrate the discharge of an employee when the agreement says nothing about conditions for discharge. The trial court entered an order compelling arbitration. We affirm.

## BACKGROUND

On June 3, 1991, Jupiter Mechanical Industries, Inc. (Jupiter), as a member of the National Fire Sprinkler Association, Inc. (Association), entered into a collective bargaining agreement (Agreement) with the Sprinkler Fitters and Apprentices Local Union No. 281 (Union). The Agreement stated, in article 2, that it constituted "the entire agreement between the parties."

Article 16, entitled *"Grievance Procedure and Arbitration,"* pertained to "[a]ll disputes and grievances by employees and employers relative to the interpretation or application of this Agreement." It provided for a four-step procedure.

First, the aggrieved employee was to advise the business agent of the local union of the problem (step 1). Next, the agent would contact the employer and attempt to resolve the grievance (step 2).

If this attempt failed, the next step was to file a written grievance, by registered mail, with the National Fire Sprinkler Association (step 3). The exact date of the grievance, the nature of the grievance, and the provision of the Agreement alleged to have been violated were to be included in this written notice. The Association would then set up a meeting between the employer and the local union agent "to resolve said grievance."

If the parties still failed to resolve the grievance, the fourth step was to submit the matter for binding arbitration.

On July 6, 1994, Jupiter discharged one of its employees, Lori Gavin (Gavin), for refusing to perform certain tasks which were within her job description. Gavin, a member of the Union, contacted her Union agent. On July 19, 1994, the Union filed a written grievance against Jupiter on Gavin's behalf, in accord with the first paragraph of step 3 of the grievance procedure. The grievance alleged that Gavin was wrongfully discharged because she had been

unable to perform assigned tasks due to a work-related injury. The Union did not indicate any specific provision of the Agreement which it alleged Jupiter to have violated.

A grievance hearing was held pertaining to Gavin's claim, in accord with the second paragraph of step 3 of the procedure. Jupiter participated. But when the parties were unable to resolve the dispute and the Union filed a demand for binding arbitration, Jupiter refused to participate. Step 4 never took place. Instead, Jupiter filed a complaint in the circuit court of Cook County for declaratory judgment and a stay of arbitration, in accord with the Illinois Uniform Arbitration Act. 710 ILCS 5/1 *et seq.* (West 1992).

Jupiter argued that the grievance was not arbitrable. No violation of the Agreement was cited by the Union, Jupiter said, because the discharge of employees does not fall within the scope of the collective bargaining agreement between the parties. Therefore, said Jupiter, no right to arbitration attached.

After hearing argument by the parties, the circuit court denied Jupiter's request, finding that the arbitration agreement covered the underlying dispute. An order was issued compelling arbitration. It is from this order that Jupiter appeals.

OPINION

Whether a matter is arbitrable and who should decide that issue—court or arbitrator—is far from clear. Since neither side in this dispute has contended that the issue is preempted by federal law, we will look to the law of this state, guided by the labor-management decisions of the United States Supreme Court. See *Consolidated Broadcasting Corp. v. American Arbitration Ass'n*, 115 Ill. App. 3d 577, 580, 450 N.E.2d 1252 (1983).

Jupiter contends, and the Union does not dispute, that this case is governed by the Uniform Arbitration Act (the Act) (710 ILCS 5/1 *et seq.* (West 1992)).

■ The Act applies to all written agreements to arbitrate, even those appearing in collective bargaining agreements, unless a statute specifically provides for an exception. *Chicago Transit Authority v. Amalgamated Transit Union Local 308*, 244 Ill. App. 3d 854, 859, 614 N.E.2d 120 (1993). Section 2(b) of the Act gives courts the authority to stay arbitration proceedings on a showing that there is no agreement to arbitrate. Whether federal statutory and case law preempts the field is not an issue in this case. See *Kennedy v. Commercial Carriers, Inc.*, 739 F. Supp. 406, 409-10 (N.D. Ill. 1990).

■ When determining whether a particular dispute is subject to arbitration, our courts apply a more stringent test to disputes which

arise from commercial activities than to disputes which arise from collective bargaining agreements. *Kennedy v. Commercial Carriers, Inc.*, 258 Ill. App. 3d 939, 943, 630 N.E.2d 1059 (1994). Arbitration of collective bargaining disputes serves salutary purposes: "not only a substitute for litigation, but a necessary complement to negotiation and an expedient in averting economic strife between the parties." *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600*, 74 Ill. 2d 412, 419, 386 N.E.2d 47 (1979). We must recognize the "unique function of arbitration in the context of labor-management relations." *Croom v. City of De Kalb*, 71 Ill. App. 3d 370, 374, 389 N.E.2d 647 (1979).

■ Arbitration is a matter of contract, and a party cannot be required to arbitrate any dispute which he or she has not agreed to arbitrate. *United Cable Television Corp. v. Northwest Illinois Cable Corp.*, 128 Ill. 2d 301, 310, 538 N.E.2d 547 (1989). Generally, where the interpretation of a collective bargaining contract is involved, there is a presumption of arbitration. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 1417-18, 80 S. Ct. 1347, 1353 (1960).

In this case, the contract is silent on the question of when an employee may be discharged and for what reasons. There are references to the parties' "hope and belief" that the agreement will "remove the causes for industrial strife and bring about a better understanding between Employer and the Union" (article 2), a "recognition" of the Union's role as bargaining representative of all employees (article 3), and a provision for a termination form for employees who are terminated (article 13). But the contract says nothing about cause for termination, a curious omission in an industry-wide collective bargaining agreement.

Jupiter contends the lack of specific language concerning reasons for discharge means that employees are at will and may be discharged for any reason. Therefore, says Jupiter, an employee's discharge is not an arbitrable matter.

The Union claims that "discharge for cause" is implied in all collective bargaining agreements, including this one, and that the company agreed to arbitrate all employee discharge disputes.

Jupiter relies on *Croom v. City of De Kalb*, 71 Ill. App. 3d 370, 389 N.E.2d 647 (1979). There, the dispute was over additional pay for firefighters assigned to duties as acting officers. The arbitration clause in the collective bargaining agreement stated:

> "In the event that the Union Committee and the aggrieved are dissatisfied with the City Manager's decision and said grievance *involves the interpretation or application of the express provisions*

*of this Agreement,* the Union may refer the matter to Arbitration
\*\*\*." (Emphasis added.) 71 Ill. App. 3d at 371.

There was no express provision in the Agreement covering additional pay for firefighters assigned to duties as acting officers. For that reason, the court held the arbitration clause did not cover the dispute.

In *Croom,* the contract established a broad grievance procedure and a narrow scope of arbitration. In the case before us, the grievance procedure and the arbitration procedure are inseparable. Their scope is much broader than that in *Croom.*

Article 16 of the agreement in this case provides:

"All disputes and grievances by employees and employers *relative to the interpretation or application of this Agreement* shall be processed in the following manner:

1. If an employee has a grievance relative to the interpretation or application of this Agreement, he shall advise the Business Agent of the Local Union.

2. The Business Agent shall contact the employer within five working days and attempt to resolve said grievance. If he fails to resolve the grievance the Business Agent shall

3. Reduce the grievance to writing, setting forth the exact date of the alleged grievance, the nature of the grievance and the Article of the Agreement which has been violated and submit this to the National Fire Sprinkler Association, Inc. by registered mail requesting a meeting.

Within 10 working days of the receipt of said notice, the National Fire Sprinkler Association, Inc. shall meet with a representative of the Local Union and Employer involved to resolve said grievance.

4. If the parties fail to resolve the grievance, they shall immediately submit the grievance to final and binding arbitration as follows \*\*\*." (Emphasis added.)

The procedure for selecting the board of arbitration followed.

Jupiter took part in the grievance procedure. The October 13, 1994, grievance hearing was held, attended by the discharged employee, representatives of the company, and representatives of the Union. A document in the record, entitled "Minutes of the Grievance Hearing," states: "Richard Sullivan [company representative] made an opening statement. He stated that this is step #2 of the Grievance Complaint by Lori Gavin. He stated that we are trying to solve this without an arbitrator." (Actually, the hearing was part of step 3.)

The minutes reflect that the employee, the Union representative, and the company representative spoke at the hearing. Disagreements

were aired. Positions stated. For the first time, Lori Gavin raised the question of female discrimination. The grievance was not resolved. The company refused to arbitrate.

On appeal, Jupiter places heavy emphasis on the fact that the Union grievance did not point to any particular provision of the collective bargaining agreement. That may be, but the omission was not important enough to cause Jupiter to refuse to take part in the grievance procedure—to the point where arbitration was demanded by the Union.

We believe Jupiter's participation in the grievance procedure was its admission that the use of article 16 of the contract, with its four steps, was the appropriate method of resolving the dispute. Taking three out of four steps is a giant stride toward completing the agreement's procedure that moves from grievance hearing to binding arbitration. We do not believe Jupiter may unilaterally decide to dispense with step 4.

■ Under federal law, the question of whether the parties agreed to arbitrate a particular matter is for the courts to decide, without regard to the merits of the claim. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649-50, 89 L. Ed. 2d 648, 656, 106 S. Ct. 1415, 1418-19, (1986). An order to arbitrate a particular grievance "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83, 4 L. Ed. 2d 1409, 1417-18, 80 S. Ct. 1347, 1353 (1960).

■ In this state, when the language of an arbitration clause is broad, and it is unclear whether the subject matter of the dispute falls within the scope of the arbitration agreement, "the question of substantive arbitrability should initially be decided by the arbitrator." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 447-48, 530 N.E.2d 439 (1988). Also see *Caudle v. Sears, Roebuck & Co.*, 245 Ill. App. 3d 959, 963, 614 N.E.2d 1312 (1993). While *Donaldson* and *Caudle* were not collective bargaining cases, nothing in the decisions reflects an intent to restrict the entry-into-arbitration-test to commercial cases.

■ We believe the language of the arbitration clause in this case is broad, because it contains no limiting language other than a reference to the agreement. Whether the discharge dispute falls within the arbitration agreement is unclear. *Donaldson* requires that this case move to arbitration. In addition, we have no "positive assurance" that the arbitration clause does not cover the dispute. *United Steelworkers of America* requires arbitration.

224

## CONCLUSION

Under either the federal or the Illinois standard, the matter must proceed to arbitration. By requiring the parties to proceed to arbitration, we are not defining, limiting, or deciding any of the issues that are to be examined by the arbitrator. Nor is it our intention to resolve the question of whether the Agreement contains an implied "just cause" provision. Whether conditions of discharge are part of the collective bargaining agreement is for the arbitrator to decide. Our role is to determine whether the grievance should proceed to the arbitrator. It should. We affirm the trial court's order compelling the parties to proceed to arbitration.

Affirmed.

BUCKLEY and BRADEN, JJ., concur.