# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*City of Naperville v. Illinois Fraternal Order of Police, Labor Council, F.O.P. Lodge No. 42*, **2013 IL App (2d) 121071**

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF NAPERVILLE, Plaintiff-Appellant, v. THE ILLINOIS FRATERNAL ORDER OF POLICE, LABOR COUNCIL, F.O.P. LODGE NO. 42, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-1071 |
| Filed | September 24, 2013 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In plaintiff city's appeal from an arbitrator's finding that the collective bargaining agreement between the city and the union representing the city's police officers governed a dispute arising from the city's refusal to hire an officer to drive a snowplow while he was off duty and required arbitration of the issue, the appellate court held that the collective bargaining agreement did not govern the dispute, since no express provision of the agreement referred to the city's right to establish rules for other work an officer could do for the city while off duty; therefore, the issue was not subject to arbitration. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-MR-226; the Hon. Bonnie M. Wheaton, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Margo L. Ely, City Attorney, and Mark Antonio Scarlato, Assistant City Attorney, both of Naperville, for appellant.

Jeffery Burke, of Illinois Fraternal Order of Police, Labor Council, of Western Springs, for appellee.

Panel                    JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
                         Justices Hudson and Birkett concurred in the judgment and opinion.


**OPINION**

¶ 1     The instant controversy arises from a dispute between the City of Naperville (the City) and the Illinois Fraternal Order of Police, Labor Council, F.O.P. Lodge No. 42 (the Lodge), as to whether the parties' collective bargaining agreement (CBA) governed a situation where the City refused to hire a member of the Lodge to operate a snowplow while he was off duty. An arbitrator found that the CBA governed the parties' dispute, and the circuit court of Du Page County affirmed that decision. The City appeals from that order. We reverse.

¶ 2                           BACKGROUND

¶ 3     The City is a municipal corporation and home rule unit of government that employs approximately 131 police officers. The Lodge is the sole and exclusive collective bargaining representative for the Naperville police officers. The City and the Lodge entered into a CBA. The provisions of the CBA pertinent to this appeal are:

"Section 4.1

Except as specifically limited by the express provisions of this Agreement, the City retains all traditional rights to manage and direct affairs of the Police Department in all of its various aspects and to manage and direct its employees, including but not limited to the following: To plan, direct, control and determine the budget and all the operations, services and missions of the Police Department; *** to make, alter and enforce reasonable rules, regulations, orders, policies and procedures ***.

* * *

Article 9
Grievance Procedure
Section 9.1 Definitions

* * *

A 'City/External Grievance' is defined as a grievance which pertains to a matter involving policies established by the City involving an alleged violation of an express

provision of this Agreement including, but not limited to issues such as use of sick leave or availability of medical benefits.

\* \* \*

Section 9.3 Arbitration

If the grievance is not settled \*\*\* and the Lodge wishes to appeal the grievance \*\*\*, the Lodge may refer the grievance to arbitration.

\* \* \*

Section 9.4 Limitations on Authority of Arbitrator

The arbitrator shall have no right to amend, modify, nullify, ignore, add to, or subtract from the provisions of this Agreement.

\* \* \*

Section 29.3 Entire Agreement

This agreement constitutes the complete and entire Agreement between the parties for its term. \*\*\* The parties acknowledge that, during the negotiations which resulted in this Agreement, each has the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law or ordinance from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement."

¶ 4 It is also relevant to this appeal that the City's department of public works (DPW) is responsible for snow removal from City streets and cul-de-sacs. Each snow season, the DPW hires employees from other City departments to drive snowplows and remove snow from cul-de-sacs. It is a voluntary program available to employees during their off-duty hours. The program is controlled and managed solely by the DPW. The police department does not have a role in hiring, firing, or managing snowplow drivers.

¶ 5 During the winter of 2009, City police officer William Kovarik applied with the DPW to participate in the voluntary snow removal program. After he was not hired, he filed a grievance under the CBA, claiming that he had a contractual right to snowplow work and that he was wrongly denied the opportunity to snowplow. The City responded to the grievance by asserting that the grievance was invalid because it did not implicate an "express provision" of the CBA, and, therefore, the matter was not arbitrable.

¶ 6 After the Lodge continued to pursue Kovaril's grievance pursuant to the CBA, the matter was ultimately assigned to an arbitrator. Because the City continued to protest that the dispute was not subject to arbitration, the arbitrator agreed to bifurcate the proceedings and rule on the arbitrability of the matter prior to an arbitration on the merits.

¶ 7 On July 12, 2010, following a hearing, the arbitrator found that the City interpreted the phrase "express provision" too narrowly. Instead, the arbitrator explained, the CBA required only that some express provision "be shown to cover or deal with [the] dispute in the sense that one can plausibly maintain that the contract has or has not been violated." The arbitrator found that section 4.1 of the CBA, which provided that the City had the power to make reasonable rules and regulations, was an express provision that subjected the parties' dispute to arbitration.

¶ 8    On August 31, 2010, the City filed a complaint for declaratory judgment in the circuit court. The City sought a declaration that the grievance was not arbitrable under the terms of the CBA. On January 24, 2011, the circuit court dismissed the City's action without prejudice.

¶ 9    On December 9, 2011, following a hearing, the arbitrator ruled in the Lodge's favor as to the merits of Kovaril's grievance. On February 9, 2012, the City again filed a complaint for declaratory judgment in the circuit court, seeking a declaration that the grievance was not arbitrable. On September 9, 2012, the circuit court dismissed the City's complaint with prejudice, holding that the grievance was substantively arbitrable pursuant to section 4.1 of the CBA and that the arbitrator had correctly ruled on the merits. The City thereafter filed a timely notice of appeal.

¶ 10                                        ANALYSIS

¶ 11    On appeal, the City argues, as it did throughout the proceedings below, that the underlying dispute between it and the Lodge is not subject to arbitration.

¶ 12    At the outset, we address the Lodge's argument that the City's appeal is untimely because the City failed to appeal the arbitrator's initial July 12, 2010, ruling on arbitrability. The Lodge contends that, pursuant to section 12(b) of the Uniform Arbitration Act (the Act) (710 ILCS 5/12(b) (West 2010)), the City was obligated to appeal the arbitrator's initial ruling within 90 days. Because it did not, the Lodge insists that the City's action is barred by *res judicata* and collateral estoppel.

¶ 13    Section 12 of the Act provides that a party may seek to have a court vacate an arbitrator's award. 710 ILCS 5/12(a) (West 2010). To do so, the party must file its application within 90 days after delivery of a copy of the award to the party. 710 ILCS 5/12(b) (West 2010). Here, the arbitrator did not enter an award on July 12, 2010. Rather, it simply found that the parties' dispute was subject to arbitration. Thus, pursuant to section 12(b), there was not a basis for the City to appeal the arbitrator's initial decision. Further, although the City did appeal to the circuit court the arbitrator's initial decision, on January 24, 2011, the trial court dismissed the City's action without prejudice. Dismissals that are entered without prejudice are not final and appealable orders. *DeLuna v. Treister*, 185 Ill. 2d 565, 569-70 (1999). As such, neither *res judicata* nor collateral estoppel barred the City from raising again its contention that the parties' dispute was not subject to arbitration. *Arnold Schaffner, Inc. v. Goodman*, 73 Ill. App. 3d 729, 732 (1979) (*res judicata* and collateral estoppel apply only where there is a final judgment). The City's appeal before us was timely filed.

¶ 14    Turning to the merits of the City's appeal, we note that the issue of whether a contract to arbitrate exists must be determined by the court, not an arbitrator. "[I]f the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised ***." 710 ILCS 5/2(a) (West 2010). Although arbitration is a favored method of dispute resolution, the parties to an agreement are bound to arbitrate only those issues they have agreed to arbitrate, as shown by the clear language of the agreement and their intentions expressed in that language. *Menard County Housing Authority v. Johnco Construction, Inc.*, 341 Ill. App. 3d 460, 463 (2003).

¶ 15    Where there is an arbitration agreement, but it is unclear whether the subject matter of the dispute falls within the scope of the arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 447-48 (1988). This is consistent with the purpose of arbitration, employing the arbitrator's skilled judgment to resolve the ambiguity. *Id.* at 448. Where an arbitrator decides the question of arbitrability in the first instance, the circuit court must still review the arbitrator's decision *de novo*. *Menard County Housing Authority*, 341 Ill. App. 3d at 463. Were this not so, a "party would be bound by the arbitration of disputes he has not agreed to arbitrate and would be left with only a court's deferential review of the arbitrator's decision on the question of arbitrability." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 14 (2001). This court reviews *de novo* the circuit court's construction of an arbitration clause. *Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 379 Ill. App. 3d 214, 227 (2008).

¶ 16    In *Croom v. City of De Kalb*, 71 Ill. App. 3d 370 (1979), this court addressed a similar issue as to whether the parties' CBA bound them to arbitrate a certain dispute. In *Croom*, firefighters filed an action to force the city to arbitrate the issue of additional pay for firefighters who were assigned the duties of acting command officers. The firefighters sought "acting up" pay for the additional duties they were required to perform. The city refused to arbitrate the matter, claiming that there was no express provision in the CBA that required it to do so. The firefighters argued that the dispute was subject to arbitration due to the contract's wage provisions. The circuit court found that there was no express provision in the CBA that required the parties to arbitrate. *Id.* at 373.

¶ 17    On appeal, this court affirmed. *Id.* at 376. We explained that, because the CBA provided that only grievances implicating an express provision of the agreement could be arbitrated, that necessarily meant that not all grievances were subject to arbitration. *Id.* at 375. We held that the parties had not agreed to arbitrate the issue of whether certain firefighters were entitled to "acting up" wages, because there was no express provision indicating that the parties would arbitrate that issue. *Id.* at 375-76. In so ruling, we rejected the firefighters' argument that the CBA's reference to wages meant that any dispute over wages was arbitrable. We further explained that our determination was supported by the CBA's provision that the firefighters had the unlimited right and opportunity to make demands and proposals with respect to any subject matter. *Id.* Thus, because the CBA was silent as to the issue of additional pay for the performance of the duties of acting command officers, it meant that there was not an agreement to arbitrate that issue. *Id.*

¶ 18    Here, the parties' CBA indicated that only a grievance that involved an express provision would be subject to arbitration. This necessarily means that not every grievance a police officer had with the City would be subject to arbitration. *Id.* Further, "express" means "clearly and unmistakably communicated; directly stated." (Internal quotation marks omitted.) *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 333 (2009). There is no provision in the CBA that directly states that a police officer may seek to arbitrate the City's failure to hire him to drive a snowplow while he was off duty. As the CBA indicates that the parties had the right to seek the inclusion of such an issue in the agreement, but none is included, there is an inference that the parties did not agree to arbitrate that issue. See *Croom*, 71 Ill. App. 3d at 375-76. Accordingly, we hold that, pursuant to the plain language

of the CBA, the City was not obligated to arbitrate the underlying dispute with the Lodge. The circuit court therefore erred in finding to the contrary.

¶ 19     In so ruling, we reject the Lodge's argument that section 4.1 of the CBA constituted an express provision that required the parties to arbitrate the underlying dispute. Section 4.1 refers to the City's ability to make reasonable rules, regulations, and orders in determining the services and missions of the police department. That section does not specifically refer to the City's ability to establish rules for other work that police officers do for the City while they are off duty. To interpret section 4.1 as broadly as the Lodge asks that we do would essentially render meaningless section 9.3's requirement that only a grievance involving an express provision of the CBA be subject to arbitration. That, of course, we decline to do. See *Thompson v. Gordon*, 241 Ill. 2d 428, 442 (2011) (courts will not interpret a contract provision in a manner that would render provisions null or meaningless, or in a way that is contrary to the plain and obvious meaning of the language used).

¶ 20                                        CONCLUSION

¶ 21     For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed.

¶ 22     Reversed.